**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. AND OBERT, INC.,** | § § § § | |
| **Plaintiffs,** | § § | **CASE NO. 6:20-cv-00018-ADA** |
| **vs.** | § § | **JURY TRIAL DEMANDED** |
| **CH LIGHTING TECHNOLOGY CO., LTD., ELLIOTT ELECTRIC SUPPLY INC. AND SHAOXING RUISING LIGHTING CO., LTD.,** | § § § § § | **[FILED UNDER SEAL]** |
| **Defendants.** | § § | |

**PLAINTIFFS JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD.,**
**AND OBERT, INC.'S OPPOSITION TO DEFENDANTS' MOTION**
**TO STRIKE FINAL INFRINGEMENT CONTENTIONS**

**REDACTED - PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 1

III. LEGAL FRAMEWORK ..................................................................................... 4

IV. ARGUMENT ........................................................................................................ 5

    A. Defendants failed to bring this motion in a timely manner .................................. 5

    B. Plaintiffs' Final Infringement Contentions were not untimely ............................ 6

    C. Defendants are not prejudiced ............................................................................. 8

    D. Judicial economy favors resolving all infringement disputes in a single
    case ..................................................................................................................... 10

V. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co.*,
　No. 4:14-CV-371, 2016 WL 1244974 (E.D. Tex. Mar. 30, 2016) ...........................................6

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd. et al*,
　2:13-cv-213-JRG-RSP, 2015 WL 1848524 (E.D. Tex. Jan. 23, 2015) ...................................5

*S & W Enters., LLC v. Southtrust Bank of Ala., NA*,
　315 F.3d 533 (5th Cir. 2003) ..................................................................................................5

I.      **INTRODUCTION**

More than *two months after* Plaintiffs served their Final Infringement Contentions on the Court's deadline, but with just over a month left in fact discovery, Defendants[1] now seek to exclude a handful of accused products (in two product lines) properly identified in Plaintiffs' contentions.   Just like their concurrently-filed motion for leave to amend their own invalidity contentions (D.I. 86), and their recent motion to amend their counterclaims to add hundreds of pages of new theories (D.I. 72), Defendants fail to provide any explanation why they waited to bring this motion for more than two months after Plaintiffs served their Final Infringement Contentions.   But even if Defendants had filed their motion in a timely manner, Defendants cannot show that there was anything improper about Plaintiffs filing their Final Infringement Contentions on the deadline specified by the Court.   Defendants also fail to show any prejudice from the addition of a couple of product lines several months before Defendants' responsive expert reports are due, relying instead on speculation and mischaracterization.   Additionally, Defendants' motion would waste judicial resources by forcing the filing of a separate suit.   Defendants' motion to strike should be denied.

II.     **FACTUAL BACKGROUND**

Plaintiffs filed their original complaint in this case on January 10, 2020, originally asserting four patents against Defendants Elliott, CH Lighting, and Ruising.   D.I. 1.   While Plaintiffs' original Complaint identified certain representative accused products, the Complaint also stated several times that it applied to additional LED tube lamps made, used, offered, sold, or imported by all Defendants (including Elliott) which infringed the asserted patents.   *Id.*, ¶¶ 40, 50, 61, 70.

---

[1] Defendants provide no explanation for why the motion was filed by CH Lighting and Ruising as well as Elliott, since Defendants' own brief emphasizes the fact that the products that it seeks to exclude are not manufactured by CH Lighting or Ruising and these two defendants (unlike Elliott) would not be liable for infringement by these products.

Nothing in the original Complaint stated that it was limited to specifically identified products or to products made by CH Lighting and Ruising.  Plaintiffs filed a First Amended Complaint (FAC) on March 16, 2020, identifying four additional patents.  D.I. 21.  The FAC likewise identified representative accused products, but also stated that it applied to additional LED tube lamps made, used, offered, sold, or imported by Defendants that infringed the asserted patents.  *Id.*, ¶¶ 46, 57, 69, 79, 95, 112, 129, 143.  Again, nothing in the FAC stated that it was limited to specifically identified products or to products made by CH Lighting and Ruising.

As the Court is well aware, Defendants CH Lighting and Ruising refused to accept service or appear in this case, despite their ongoing relationship with and representation by Radulescu LLP, until Plaintiffs were forced to file a Motion for Alternative Service (D.I. 56) which the Court indicated (at the *Markman* hearing) that it was likely to grant.  Plaintiffs do not repeat the entire procedural history of dispute except to note that Defendants rely on an April 23, 2020 letter to the Court (D.I. 34) that arose in this context.  Specifically, Defendants assert (at 5-6) that Plaintiffs' April 23, 2020 letter "confirmed that… they were only targeting products manufactured by CH." However, the cited letter to the Court simply stated that CH Lighting and Ruising manufacture "products accused of infringement" to explain the context of a dispute relating to Plaintiffs request for discovery concerning the relationship between these parties and Elliott and Radulescu LLP, about which Plaintiffs' suspicions have since proved entirely correct.  Nothing in this letter indicated that Plaintiffs were "only" targeting products manufactured by CH, as the existence or non-existence of additional infringing Elliott products was irrelevant to the issue in dispute.

After Plaintiffs served their initial infringement contentions in March 2020, Plaintiffs continued to investigate additional infringement by Elliott's products and identified additional infringing product lines sold by Elliott, including the "ESL Vision" series of products under the

ESL brand and the LED14BDT8/G4 series from GE Current.  Plaintiffs informed Elliott that they intended to seek discovery on these products when Plaintiffs served their first set of interrogatories on November 24, 2020, the day that discovery opened under the Court's scheduling order.  Ex. 1 at 3 (defining "GE" and "ESL" and identifying GE and ESL products as "substantially similar products").  Although Elliott refused to produce discovery on these products (Ex. 2), Plaintiffs nevertheless diligently inspected samples of these tubes.

Like most LED lamp tubes, these products are produced in series of variants where the fundamental structure and circuitry (*i.e.*, the infringing features) are the same but individual products within the series may vary due to, for example, the length, wattage and color temperature[2] of the lamp.  For example, the GE Current LED14BDT8/G4/**840**, LED14BDT8/G4/**850**, LED14BDT8/G4/**835**, and LED14BDT8/G4/**830** sold by Elliott are substantially identical lamp tubes except for their color temperature, which is irrelevant to the claims in this case, and GE Current advertises these products as a single line of products.  Ex. 3.  Accordingly, Plaintiffs' Final Infringement Contentions served on February 9, 2021 demonstrated infringement through teardowns and testing of one representative product each from the GE Current and ESL Vision product lines sold by Elliott, which are representative of the similar products.  D.I. 84-4, 84-5, 84-8, 84-9, 84-17, 84-18, 84-22, 84-29, 84-30, 84-36, 84-39, 84-40.

On the same day that Plaintiffs served their Final Infringement Contentions, Defendants likewise served updated Final Invalidity Contentions.  Defendants' Final Invalidity Contentions included several new references, including three publicly available patents and two new products for which Defendants produced invalidity charts.  Defendants identified, but did not chart, two

---

[2] In practical terms, color temperature is a measure of how "cool" (*e.g.*, blue) or "warm" (*e.g.*, red) the light put off by a lamp is, and is therefore useful for aesthetic choices.

additional products. *Compare* Ex. 4 at 13-14 with Ex. 5 at 14-15. For the added product references, Defendants relied on teardowns. Exs. 6-9. In other words, Plaintiffs and Defendants each produced teardowns of two additional products for their respective Final Infringement and Invalidity Contentions. None of Defendants' new references in their invalidity contentions relied on documents produced by Plaintiffs during discovery. *Cf.* Def. Mot. at 4 ("Evidence cited in the FICs against the GE and ESL products is based solely on Plaintiffs' reverse engineering… and not on any technical discovery produced by Defendants in this case").

Defendants said nothing about any alleged prejudice resulting from Plaintiffs' FICs for nearly two months. Plaintiffs' counsel spoke to Defendants' local counsel regarding the GE and ESL products in late February and confirmed that these products were accused, while Defendants did not raise any issue with these products being in the case. Bombach Decl., ¶¶ 2-4, Ex. 10. Elliott produced sales data concerning the GE and ESL products at issue, for which the production metadata indicates that it was collected in December 2020, *before* Plaintiffs served their FICs. Day Decl., ¶ 12. While Defendants' counsel briefly mentioned the GE and ESL products in a March 5 letter, that letter only raised those products in the context of requesting leave to serve additional invalidity contentions, but said nothing about being unable to prepare defenses regarding those products or this motion. Ex. 11. Defendants did not assert their intention to file this motion until an email on April 1, 2021. Ex. 12. Defendants waited another two weeks before finally filing this motion on April 16.

## III.   LEGAL FRAMEWORK

The Court set deadlines for service of Preliminary and Final Infringement and Invalidity Contentions in its Order Governing Proceedings (D.I. 19), as modified by the parties' stipulation (D.I. 65) to modify those deadlines, entered by the Court as D.I. 69. The Order Governing Proceedings states that "the parties may amend preliminary infringement contentions and

preliminary invalidity contentions without leave of the court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served, and should do so seasonably upon identifying any such material."

When a party moves for leave to amend after a deadline (which is not the case here), district courts consider four factors: (1) the explanation for the party's failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 546 (5th Cir. 2003).

## IV.   ARGUMENT

### A.   Defendants failed to bring this motion in a timely manner

Defendants' motion seeks to strike contentions that Plaintiffs filed on February 9, 2021, in accordance with the Court's scheduling order and the agreement of the parties.  Nothing in Defendants' motion explains why they waited more than two months after service of the FICs to file it, and almost that long to even *mention* any purported prejudice caused by the service of charts relating to the GE and ESL products in the FICs.

The Court may consider whether the party seeking discovery relief was itself diligent in bringing its motion.  *See, e.g. Rembrandt Wireless Techs., LP v. Samsung Elecs. Co. Ltd. et al*, 2:13-cv-213-JRG-RSP, 2015 WL 1848524, at *2 (E.D.Tex. Jan. 23, 2015) (denying motion to strike where moving party waited more than two months to raise objections to amended contentions, then waited an additional three weeks to file motion).  In this case, Defendants' belated decision to bring this motion undercuts its arguments for two reasons.

First, Defendants' delay is inconsistent with their insistence now that they are unable to prepare defenses in time.  The relevant time for assessing whether Defendants are prejudiced in

the preparation of their defense is when the contentions at issue were served, not when Defendants finally decided to raise the issue. The agreed date for serving Final Infringement and Invalidity Contentions, February 9, was four and a half months before rebuttal expert reports will be due on June 24, 2021. And Defendants knew that the GE and ESL products were at issue on the first day of fact discovery from Plaintiffs' Interrogatories. It simply does not make sense that if the service of the claim charts on two additional representative products were as prejudicial as Defendants argue, that Defendants would not have filed their motion or at least raised the issue in some way shortly after they were served.

Second, Defendants' delay in bringing this motion injects uncertainty, and additional burdens for Plaintiffs and the Court, in the final month before fact discovery closes. Because of the challenge of finding suitable locations for witnesses located in China to be deposed during COVID restrictions, and Defendants' refusal so far to provide available deposition dates for its own witnesses, most if not all of the depositions in this case will occur in approximately the last three weeks of fact discovery. Defendants' belated motion seeks to introduce uncertainty at this exact moment. That would not have happened if Defendants had brought this motion reasonably promptly after the FICs were filed.

B.     **Plaintiffs' Final Infringement Contentions were not untimely**

Defendants' motion should fail because the contentions are issue were filed on a deadline agreed by the parties and ordered by the Court, not after. Defendants' motion relies on case law citing standards for seeking leave to amend ***after*** a contention deadline expires, which is inapplicable here. Def. Mot. at 4-5, citing *Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2016 WL 1244974, at *1 (E.D. Tex. Mar. 30, 2016). However, *Imperium* involved the local rules for the Eastern District of Texas, which set a single deadline for

infringement contentions and required a party to seek leave of court to amend based on a showing of good cause later. *Id.*, citing E.D. Tex. Local Patent Rules 3-1, 3-6.

However, the parties are obviously litigating in this Court, and this Court's Order Governing Proceedings sets out a different governing regime for Initial and Final Infringement and Invalidity Contentions, and explicitly does not require leave of Court to amend on or before the final contention deadline. The OGP's requirements are that the party serving final contentions must have undertaken reasonable efforts to prepare preliminary contentions, and the amendment must be based on material identified after those preliminary contentions were served. The OGP does not say that a party is precluded from amending its final contentions to add anything that it might hypothetically have discovered before the initial contention deadline, as Defendants imply with their argument (at 5) that "Plaintiffs could have purchased the GE and ESL products in ███ 2019." Discovery of additional infringing products as a result of further investigation falls squarely within the terms of the OGP.

Indeed, Defendants themselves interpreted the OGP this way with respect to their own Final Invalidity Contentions. As noted above, Defendants Final Invalidity Contentions served on the same day as Plaintiffs' Final Infringement Contentions added new prior art references including patents and products.[3] Defendants did not move for leave of Court to serve these additional final contentions, nor did Defendants rely on any discovery provided by Plaintiffs to make these final contentions, or provide any explanation why they could not have identified the

---

[3] Defendants' new prior art added on the Final Invalidity Contention deadline should not be confused with the additional prior art that Defendants seek to add in their motion for leave to amend their invalidity contentions. The justifications Defendants provided in that motion for seeking leave to amend (*i.e.*, the GE and ESL products and amendments to some priority claims in the Final Infringement Contentions) would not apply to Defendants Final Invalidity Contentions since the Final Infringement and Invalidity Contentions were served by the parties simultaneously.

new patents and products in their Initial Invalidity Contentions.  In other words, Defendants appear to have simply conducted additional investigation, located additional prior art, and availed themselves of the Final Invalidity Contention deadline set forth in the OGP, just as Plaintiffs did with respect to the infringing GE and ESL products.  Because the OGP sets exactly the same standard for Final Infringement and Invalidity Contentions, the Court should reject Defendants' "good for me but not for thee" gamesmanship.

### C.      Defendants are not prejudiced

Defendants' various arguments that they are prejudiced by the addition of accused GE and ESL products do not withstand scrutiny.  Defendants' arguments rely entirely on speculation and hypothetical scenarios, and fail to present any evidence that they are unable to develop non-infringement defenses in the time since the FICs were served.  Defendants argue that "[h]ad Plaintiffs added the GE and ESL products to the case earlier, Defendants may have had enough time to obtain the design information from the relevant third parties."  However, Defendants present no evidence identifying any specific information that Elliott could have obtained in the time between the initial infringement contentions and their rebuttal expert report that it could not obtain between the FICs and the expert report.

Defendants note Plaintiffs' subpoenas to ESL and GE (at 7) and argue that neither third party has yet produced documents.  However, part of the reason that GE delayed its production was its insistence (even before Defendants filed this motion) on waiting for resolution of this motion before producing anything.  Ex. 13.  GE has since abandoned that position and agreed to produce technical documents.  Day Decl., ¶ 15.  And because Plaintiffs bear the burden of proof, any failure by GE or ESL to produce documents would merely limit the amount of evidence Plaintiffs could rely on at trial in addition to the existing teardowns and tests, expert analysis, and other documentation produced by Defendants themselves.  For their part, Defendants have not

served any subpoena of their own nor provided any information about whether they have attempted to obtain informal discovery from GE or ESL to develop noninfringement positions.  Merely speculating that Defendants might not be able to get information that they have not actually attempted to get does not demonstrate prejudice.

Defendants' complaint that "the circuit schematics shown in the FICs are fuzzy and illegible" (Motion at 7) opportunistically seeks to leverage a trivial administrative issue to strike a substantive portion of the case.  Defendants first raised complaints about purportedly "illegible" infringement contentions (including in the original contentions served nearly a year earlier in March 2020) in late February 2021.  Ex. 14.  While Plaintiffs disputed these claims, they nevertheless responded promptly, requested more specific information about what was supposedly illegible (which Defendants refused to provide), and produced higher-resolution copies despite Defendants' refusal to identify specific "illegible" documents, including the schematic cited in Defendants' motion.  Exs. 15, 16.  In any event, a minor administrative issue about image quality (particularly one that Defendants never needed to bring to the Court because the parties already resolved it) is not a reason to strike entire products from the case.

Defendants' claims that they will require additional discovery to analyze the integrated circuits on the GE and ESL products also do not survive scrutiny.  For example, Defendants argue (at 8) that "the ESL and GE products use different ICs… than in the CH-manufactured products." But the IC used in the GE product (LT2600G) is not only clearly visible in the contentions submitted by Defendants (Defs. Mot. Ex. 5 at 31), but CH Lighting admits in interrogatory responses  that  it  has  ██████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

████████████.  Defendants are more familiar with the circuits in these products than they acknowledge.

Defendants also rely on unfounded speculation about how long it would take to "complete reverse engineering of all 14 accused ESL and GE products" (Motion at 8).  This sentence is a clear exaggeration since, as discussed above, the ESL and GE products are not 14 distinct products, but rather a couple of product series that are substantially identical within each series other than color temperature.  Additionally, Defendants provide no evidence (1) that it would take them three months to reverse engineer a product, and (2) that they would need to wait until the conclusion of reverse engineering one product before moving on to the next one.  Such speculation based on a lack of actual evidence does not support Defendants' motion.

Finally, Defendants attempt (at 9) to shoehorn in the assorted mudslinging against Plaintiffs from their Motion to Amend Counterclaims into this motion.  Plaintiffs have already responded to these allegations in detail.  D.I. 76 at 9-10; Zhang Decl.  Moreover, Defendants fail to explain how these allegations are even relevant to this motion.

### D.    Judicial economy favors resolving all infringement disputes in a single case

Judicial economy also disfavors striking the infringement allegations against the GE and ESL products.  Although Defendants assert that striking these products would "streamline" the present case, if they are struck from the present action, Plaintiffs would simply need to assert them in a separate action, which would be considerably more time-consuming and burdensome for the parties and the Court.  Therefore, all of the infringement allegations against Defendants should be resolved in a single action.

## V.    CONCLUSION

For the foregoing reasons, Super Lighting respectfully requests that the Court deny Defendants' Motion to Strike in its entirety.

Dated:  April 23, 2021

Respectfully submitted,

**PERKINS COIE LLP**


By: */s/ Matthew C. Bernstein*
Matthew C. Bernstein
MBernstein@perkinscoie.com
California Bar No. 199240
Evan S. Day (*Pro Hac Vice*)
EDay@perkinscoie.com
Miguel J. Bombach (*Pro Hac Vice*)
MBombach@perkinscoie.com
Ruchika Verma (*Pro Hac Vice*)
RVerma@perkinscoie.com
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Chao (Wendy) Wang
WWang@perkinscoie.com (*Pro Hac Vice*)
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4315
Facsimile: (650) 838-4350

Skyler M. Howton, Texas Bar No. 24077907
SHowton@perkinscoie.com
500 N. Akard Street, Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 259-4951
Facsimile: (214) 965-7752

**ATTORNEYS FOR JIAXING SUPER
LIGHTING ELECTRIC APPLIANCE CO.,
LTD. AND OBERT, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 23, 2021, a true and correct copy of the foregoing documents have been served to all counsel of record for Defendants via Electronic Mail.

By: <u>*/s/ Matthew C. Bernstein*</u>
Matthew C. Bernstein
