```
1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
2                           WACO DIVISION

3   JIAXING SUPER LIGHTING        *     July 12, 2021
    ELECTRIC APPLIANCE, CO.,      *
4   LTD, ET AL                    *
                                  *
5   VS.                           * CIVIL ACTION NO. W-20-CV-18
                                  *
6   CH LIGHTING TECHNOLOGY CO.,   *
    LTD, ET AL                    *
7
                   BEFORE THE HONORABLE ALAN D ALBRIGHT
8                    DISCOVERY HEARING (via Zoom)

9   APPEARANCES:

10  For Plaintiff:         Matthew Cook Bernstein, Esq.
                           Perkins Coie LLP
11                         11452 El Camino Real, Suite 300
                           San Diego, CA 92130
12
                           Abigail Ann Gardner, Esq.
13                         Perkins Coie LLP
                           11452 El Camino Real, Suite 300
14                         San Diego, CA 92130

15  For Defendants:        Robert S. Hill, Esq.
                           Holland & Knight LLP
16                         200 Crescent Court, Suite 1600
                           Dallas, TX 75201
17
    Court Reporter:        Kristie M. Davis, CRR, RMR
18                         PO Box 20994
                           Waco, Texas 76702-0994
19                         (254) 340-6114

20

21       Proceedings recorded by mechanical stenography, transcript

22  produced by computer-aided transcription.

23

24

25
```

1          (July 12, 2021, 10:17 a.m.)

2          DEPUTY CLERK:  Discovery hearing in Civil Action

3    W-20-CV-18, styled Jiaxing Super Lighting Electric Appliance

4    Company, Limited, and Obert, Incorporated versus CH Lighting

5    Technology Company, Limited, and others.

6          THE COURT:  If I could have announcements from counsel

7    starting with plaintiff.

8          MR. BERNSTEIN:  Good morning, Your Honor.  This is Matthew

9    Bernstein from Perkins Coie for the plaintiff Super Lighting

10   and Obert, and I have with me my colleague Abigail Gardner.

11         THE COURT:  Mr. Bernstein, I just in my last hearing had

12   my favorite Perkins lawyer Mr. Shvodian.  So I'm glad you're

13   here this morning as well.  Welcome from San Diego.

14         If I could hear from counsel for defendant, please.

15         MR. HILL:  Good morning, Your Honor.  This is Robert Hill

16   from Holland and Knight.  I'm joined by my colleague Brian

17   Murray as well as my colleague Tiffany Lee from our summer

18   program.

19         THE COURT:  Welcome.

20         MR. HILL:  We represent all defendants here.

21         THE COURT:  Welcome to your summer associate.  And you all

22   are about to pick up a Dallas firm, are you not?

23         MR. HILL:  We are.  We're looking very much forward to

24   joining our friends at Thompson & Knight for a double dose of

25   Knights.

1          THE COURT:  And one of your counsel in Florida was the

2     person that interviewed me from the ABA.  So I've always had --

3     and despite that I still made it.  So I've always had great

4     affection for your firm.  He clearly was not completely honest

5     with the other ABA members when he told them about me.

6          So I'm happy to take up whatever the issues are.

7          MR. BERNSTEIN:  So first of all, Your Honor, thank you for

8     the time.  Just witnessing a little bit of that last hearing,

9     it's very clear that you're a very busy judge.  So we

10    appreciate you getting us on your calendar for this.

11         So, Your Honor, the three issues are plaintiff's issues,

12    and I just would like to spend about a minute, minute and a

13    half giving you a little background to kind of put everything

14    in place for the three issues.

15         And so, Your Honor, on June 3rd we deposed Jack Jiang

16    who's the general manager of one of the Chinese defendants

17    Ruising.  He's in charge of the company.  He's the general

18    manager.  He was the 30(b)(6) witness on almost every topic

19    that we served on that defendant, including what the company

20    did when it learned about the patents-in-suit.

21         The next day we deposed Gan Caiying, and she's the

22    president of CH Lighting who's the parent company of Ruising.

23    And I don't know if you remember, Your Honor, but she -- we had

24    another discovery conference in front of you where we had to

25    pretty much force the defendants to bring her to Macau for a

1    deposition.  And so she's the founder of the company.  She

2    received the pre-suit notice.  She makes all the decisions at

3    the company.

4          So we had those two depositions on June 3rd and 4th, and

5    what became very clear during the depositions is that

6    defendants really had, you know, almost completely failed to

7    comply with the most basic of discovery obligations.  They

8    sandbagged us with new facts and allegations at the

9    depositions.  They referenced documents and information that

10   had not been produced that we'd never heard before.  Dozens of

11   critical documents were produced after the deposition and after

12   the close of fact discovery, and so now we're, you know,

13   getting close to trial, Your Honor, and just -- the defendants'

14   conduct has just been precluding us from preparing for trial.

15         And so let me just now very briefly address all three

16   issues at a very high level because they all relate, Your

17   Honor.  And so --

18         THE COURT:  When is trial set for?

19         MR. BERNSTEIN:  I believe it is October 21st.  Let me get

20   in here, Your Honor.  It's October 21st.

21         THE COURT:  Okay.

22         MR. BERNSTEIN:  And so, Your Honor, the first issue is

23   defendants testified -- this was Mr. Jiang -- after learning of

24   the patents-in-suit they asked -- defendants asked Chinese and

25   U.S. counsel to analyze the patents, and the Chinese and U.S.

1   counsel analyzed the patents and concluded there was no

2   infringement and invalidity, but defendants have produced zero

3   documents regarding any of this, and it's a classic case of

4   using privilege as a sword and a shield, both of them.

5        The second issue is that Ms. Gan Caiying at her

6   deposition -- you know, she's the president of the company.

7   She testified that she never even searched for any documents at

8   all because nobody asked her to, and this really highlights the

9   discovery games that have been played by the defendants

10  throughout this case.  If you remember, they refused service

11  initially.  They affirmatively were avoiding service.  And this

12  is just another example of, you know, stuff in China, you know,

13  is -- stuff is happening.  We just don't know what's happening,

14  but it's just not acceptable for a U.S. litigation.

15       And then the third issue, Your Honor, is the defendants

16  have publicly and falsely stated that Your Honor found that

17  Super Lighting's patents were obtained illegally.  You know,

18  this is obviously not the case.  You granted a motion to amend

19  the counterclaims.  You never found any finding -- you didn't

20  conclude that there was fraud or any patents were acquired

21  illegally.

22       When asked about this at the deposition, Mr. Jiang said he

23  was told this by his counsel Radulescu LLP, and so we believe

24  there was a waiver with respect to that issue as well.

25       So those are the -- at a high level the three issues.

6

1    They all relate to -- you know, we're trying to prepare for

2    trial.  We frankly don't know what documents have been

3    provided, what searching has been done.  They're claiming --

4    they testified at length about these opinions that they got,

5    but they're not -- they're refusing to produce any of the

6    underlying documents, and so I'll get into each issue more,

7    Your Honor, but those are at a high level the issues.

8        And so if I can start with the first issue, Your Honor.

9    In response to questions about what defendants did upon

10   learning about the patents-in-suit --

11       THE COURT:  Mr. Bernstein, if you can give me just one

12   second.  I'll be -- I've got to go off camera for just one

13   second.  I'll be back in a minute.

14       (Pause in proceedings.)

15       THE COURT:  Okay.  Sorry.  I had to go grab a tablet.  Go

16   ahead.  Yes, sir, Mr. Bernstein.

17       MR. BERNSTEIN:  Thank you, Your Honor.

18       So at Mr. Jiang's deposition we asked him what defendants

19   did upon learning of the -- about the patents-in-suit.  And

20   Mr. Jiang testified that for all the patents-in-suit and all

21   other of my clients' patents, his Chinese -- he asked his

22   Chinese counsel with the assistance of Radulescu LLP, who's

23   U.S. counsel, to analyze all of these patents and that the

24   counsel concluded that defendants did not infringe and that

25   those patents were invalid.

1          Mr. Jiang also testified that he obtained opinions of

2    noninfringement and invalidity related to certain patents in a

3    Central District of California case and that the opinions that

4    he got in that other case related and covered him in a current

5    Waco case because the patents were close enough and just had

6    different numbers, a dubious proposition.

7          And so, Your Honor, I just want to show a little bit -- so

8    all of this testimony was provided.  There was never any

9    instruction for the witness not to answer any of these

10   questions.  This is actual testimony he provided.  There was no

11   clawback at the deposition of any of this testimony during the

12   deposition, and there was no clawback of any of this testimony

13   after the deposition which, you know, if they thought that

14   there was some privilege issue that was testified to, there was

15   no -- you know, after the deposition they could have used the

16   protective order to pull this stuff back.  They never did that.

17         And so let me just show you some of the testimony, Your

18   Honor.  And so this is where it started.  I'm asking Mr. Jiang

19   about the '140 patent, and what he says is, you know, after

20   they obtained the patents, we gave them all to our attorneys

21   for them to do an analysis and tell me -- and they told him the

22   results of the analysis.  This is on Page 56 of his transcript.

23         It continues, and this is with respect to the '140 patent,

24   one of the patents-in-suit, he's saying, our attorneys told us

25   that for all of our products they do not infringe Super

8

1    Lighting's patents.

2         (Clarification by the reporter.)

3         MR. BERNSTEIN:  And so here is more testimony about this

4    opinions and what Mr. Jiang is saying is, so either we entirely

5    do not infringe upon those patents or there were patents of

6    which the time frame was earlier than Super Lighting's patents.

7    So noninfringement and invalidity.

8         Here's another.  So this is again some more testimony by

9    Mr. Jiang where he says he trusted the information he was told

10   by his law firm.  He gives some technical testimony up here and

11   then he says, again, there's no infringement or there's

12   invalidity.

13        Now, this is just more of this testimony talking about --

14   this is not just the -- one of the patents.  This is all of the

15   patents-in-suit:  And the conclusions we drew from the analysis

16   were that we either entirely do not infringe those patents or

17   there were patents that were earlier than their patents.

18        And this is again -- this came from the Chinese law firm.

19        And just more and more, Your Honor.  And just to confirm,

20   here's the testimony saying that it wasn't just Chinese counsel

21   that provided these opinions, but it was also the Radulescu law

22   firm who also was part of the analysis.

23        And then here, Your Honor, there's also some testimony

24   again where what Mr. Jiang with defendants, the position they

25   took was the patents of Super Lighting asserted in the Texas

1   case are the same as those ones asserted in a California case.

2   It's just they appeared under different patent numbers and

3   patent titles.

4       And we learned that the patents asserted in the Texas case

5   are basically the same as those asserted in the California

6   case.  Radulescu agreed with that viewpoint as well, and I

7   mentioned many times before that after the analysis is done,

8   it's found that the patents asserted in the two cases are

9   basically the same.  And for that, David has never said

10  anything to disagree with that or in contradiction to that.

11      So, Your Honor, this is -- he's providing testimony about

12  conversations that he's having with his U.S. counsel right

13  here.  There's no objection to any of this testimony.  And this

14  is just -- you know, very briefly, this s not just Mr. Jiang.

15  Mr. Jiang testified that he provided these -- information

16  regarding these opinions to Ms. Gan, the president of the

17  parent company.

18      And so, Your Honor, this was obviously pretty much jaw

19  dropping testimony when this was given because we had heard

20  about nothing.  None of this was in any of their interrogatory

21  responses.  They hadn't produced a single document related to

22  any of this stuff.  It was shocking to hear this stuff at the

23  deposition for the first time.  And it's a classic case of

24  shield and sword.  Mr. Jiang was talking about all the reasons

25  why defendants acted in good faith after learning of the

1    patents or at least what he did upon learning of the patents.

2    And almost all this was based on opinions and analysis done by

3    his U.S. and Chinese lawyers.  But the underlying analysis, the

4    opinions, the communications, none of that has been produced.

5    Not a single page of this has been produced.  Nothing related

6    to this has been produced.

7         Now, defendants seem to be making two arguments.  The

8    first is that they raised objections to a privilege waiver at

9    the deposition, but this simply is not true.  A couple of times

10   there was, you know, hey, don't -- instruct the witness not to

11   reveal any attorney/client privilege communications, but you

12   can answer however you want to answer.

13        And all the testimony I showed you, and a whole lot more,

14   was made part of the record.  There was -- there was never

15   any -- like I said, no clawback of any of this testimony either

16   during or after the deposition.  You know, plain and simple,

17   this testimony came out at the deposition, and the witness was

18   represented by counsel.  If there was -- this was a privilege

19   issue, they should have stopped it.  They should have asked it

20   to be withdrawn, et cetera.  That never happened.

21        The second argument that the defendants are seemingly

22   making is that even though there's all this testimony about

23   privileged issues and privileged topics about noninfringement

24   about invalidity that because they're not going to rely on an

25   opinion of counsel, there's been no waiver.  But that's not --

1   that's not the law.  That's exactly why there is this

2   shield/sword doctrine.  The witness clearly testified about

3   privileged information, about privileged topics,

4   noninfringement and invalidity, and that resulted in a waiver.

5       Your Honor, when I was a first and second year lawyer just

6   starting working on these patent cases, it was actually for a

7   case in front of Judge Sparks in Austin.  I was told that

8   there's two ways that you deal with privilege and only two

9   ways.  The first is you don't produce a single document, you

10  don't provide any testimony, you don't provide any information

11  at all, and what that does is it preserves privilege.

12      The other is if you do produce a document or provide any

13  information, there's a waiver and you have to produce

14  everything related to the subject matter of the waiver.  You

15  can't be half pregnant, which is seemingly the argument that

16  defendants are making.

17      And so for that, Your Honor, what we're asking for is, you

18  know, a finding of waiver.  We want everything related to the

19  subject matter, infringement, invalidity.  We want everything

20  related to the opinions, all the communications, anything that

21  shows the witness' reliance or lack of reliance on those

22  opinions.  We want all of that produced and produced

23  immediately.  And then we want another deposition of Ms. --

24  after those documents are produced of Mr. Jiang, of Ms. Gan, of

25  the Chinese lawyers who provided the opinion and of Radulescu

1   LLP who also worked on the opinion and also said that patents

2   with the same numbers are covered by an opinion.

3          And so with that, Your Honor, I will answer any questions

4   you might have or pass the lectern to Mr. Hill.

5          THE COURT:  I'll hear from Mr. Hill.

6          And, Mr. Hill, I'll tell you my concern here is that --

7   and if -- Mr. Bernstein, if you can leave up Slide 14 that has

8   an example of Mr. Jiang testifying.

9          Here's my problem.  The question is, you would have told

10  her what?  You would have told Ms. Gan what?

11         So that's not a question that by the question would lead

12  into attorney/client communication necessarily, but your

13  witness volunteers:  I definitely would have told her what our

14  counsel said to us.

15         It goes on from there.  I won't read it in the record, but

16  it's -- he elaborates.  When he finishes, there's nothing from

17  counsel saying, Mr. Jiang, I've told you before, I'm going to

18  tell you again, don't reveal what information you got from the

19  lawyers.  I move to strike.  I want that sealed.  You know, we

20  need to take a break so I can go talk to Mr. Jiang, explain

21  this to him again.  Instead, nothing is said by counsel on your

22  side.

23         And the next question:  And when did you have that

24  conversation with Ms. Gan?  And goes on from there.

25         And there's nowhere -- unless I'm just missing it, because

1    I only see one page -- where counsel took any step to fix the

2    disclosure of this information.  And so the problem it puts me

3    in now is it seems to me that your client is -- has taken an

4    affirmative position with regard to their conduct and has

5    decided to base that on information they got from their

6    counsel.  That's the point of this answer, and if they are --

7    if Mr. Jiang -- for the plaintiff to cross-examine Mr. Jiang,

8    he's entitled to know now whether in fact counsel actually did

9    tell Mr. Jiang that or not.  In other words, it now has become

10   information that could be used to impeach Mr. Jiang what he

11   was -- what information he was provided.  So I'm not sure what

12   it is, Mr. Hill, you want me to do here.

13        MR. HILL:  Well, let me -- first of all, let me start by

14   saying I disagree with Mr. Bernstein's characterization of this

15   record because, first of all -- first of all, I do want to make

16   it very clear, as I did make clear on the record during the

17   deposition and as we made clear in follow-up communications,

18   that defendants are not relying on any opinion of counsel

19   defense in this case.  There's no situation where there's a

20   sword and a shield because not only have we said that we're not

21   doing that, we've affirmatively said that we will agree not to

22   bring any witness to testify as to the advice of Chinese

23   counsel or Radulescu.  We further said that we're happy to move

24   in limine for this to make it as official as possible.

25        And even during the deposition itself there were

1    instructions not to answer, there was additional colloquy.

2    Multiple times I said, we're not making this -- these opinions

3    that they're talking about that are being elicited from a non

4    lawyer, non legal expert testifying through a translator, he's

5    based in China, getting very aggressive questioning.  What

6    we're saying is we're not -- we're not relying on these

7    positions for this case.  These issues are not at issue in this

8    case.

9         And in the e-mail communications back and forth after this

10   as well, we said, our position is that there's no waiver.

11   We're not relying on any of this information.  It's the kind of

12   privileged information that all people who have attorneys will

13   look to get, but we're not bringing that into this case as a

14   defense for these defendants.  And in that way there's -- in

15   terms of a sword and a shield, we don't have -- we will never

16   call anyone to testify as to this.  It wasn't produced by

17   previous counsel and it wasn't produced by us because there's

18   no opinion of counsel defense.  And especially when we combine

19   that with affirmative representation that we disagree, which, I

20   mean, we didn't use the word "clawback," but we said that our

21   position was that it was privileged and that especially since

22   we're taking the position that none of this will be referred to

23   at trial and that we're not making an opinion of counsel

24   defense in the way that is relevant to patent litigation.  For

25   all of those reasons we've taken, you know, multiple steps both

1  during the deposition and after the deposition to give full

2  comfort that these materials are not intended to be relied on,

3  are not going to be referenced in any way.

4      THE COURT:  Let me -- okay.  So let me -- so,

5  Mr. Bernstein, what I hear Mr. Hill telling me is that they are

6  not going to use the information as a sword, meaning they're

7  not going to ever have any of their folks take the position

8  that they relied on counsel as a defense and therefore that

9  it -- your argument about it now being shielded is incorrect.

10  So if the -- if the defendant never raises, you know, in

11  opening argument or in any of their examination of the

12  witnesses any reliance on their client on the attorneys, what

13  relevance would it have in your case?

14      MR. BERNSTEIN:  So, Your Honor, it's entirely relevant

15  because this is -- what did you -- the question -- this all

16  began with what did you do and -- once you learned about the

17  patents-in-suit?  The only testimony, the only evidence, the

18  only record in this entire case of what was done was all of

19  this testimony that was provided by Mr. Jiang at the

20  deposition.  That's their story.  They have nothing else.  If

21  there's something else, I'm going into trial not knowing

22  anything what they're actually going to say in response to, you

23  know, what did you do upon learning of the patents-in-suit?

24      We asked in interrogatory about this early in the case.

25  They said nothing.  Zero.  And that -- you know, when I asked

1  about it --

2       THE COURT:  Got it.  I got it.

3       MR. BERNSTEIN:  But it's more than that, Your Honor.

4       THE COURT:  No.  Hold on one second.  Hold on one second.

5       Mr. Hill, Mr. Bernstein makes a good point, which is it's

6  Mr. Bernstein's burden to prove willfulness.  And so to prove

7  that, he ought to be able to say -- he ought to be able to put

8  on evidence with respect to what your client did when they --

9  when they got notice of the lawsuit and this is what your folks

10 answered.  When you got -- when you found out that you've been

11 accused of patent infringement by the plaintiff, what did you

12 do, and this is his answer.  Why isn't that relevant for the

13 plaintiff to prove their case?

14      MR. HILL:  My concern, Your Honor, is at this point if --

15 if this is the standard any time a defendant or potential

16 defendant communicates with their counsel, even if it's not for

17 the purpose of formally raising an opinion of counsel defense,

18 even if it's not for the purpose of telling a judge or a jury

19 that their actions were justified based on that, if that's the

20 standard of a waiver, then my concern would be effectively in

21 all cases where there are parties who have counsel that there

22 would be a waiver.  I mean, that's why -- we've looked

23 carefully at the case law.  Everything that we're seeing really

24 comes down to whether or not it's an issue for the case,

25 meaning is the defendant making that affirmative position

1    because there's a -- I think a recognition that if someone

2    talked to their attorney when something is brought to their

3    attention or whatever and if that's then the waiver, that will

4    always be the waiver.  If they --

5        THE COURT:  But I -- but here's where I don't know that I

6    agree with you, and I'll go back and hear from Mr. Bernstein

7    who I cut off.  But, I mean, I think the world knows that when

8    Mr. Bernstein's client sued yours that one of the things they

9    did was contact counsel.  That's why you're here.  I mean, one

10   of the things you do is you go hire counsel, and I don't think

11   that's -- and had Mr. Bernstein or whoever it was asked "what

12   did you do when you got the lawsuit," they said, well, we hired

13   counsel and we're vigorously defending this lawsuit.  You know,

14   that's no waiver.  Nothing there.

15       I think the point Mr. Bernstein is making is that when he

16   asked "what did you do," he got a robust answer that we had

17   counsel who told us a number of things, that we didn't

18   infringe, the patents are invalid, they are the same number as

19   patents in a California case.  And so that's -- having revealed

20   that, that is now the state of the record of what your client

21   did.  And that's why I'm saying we now have a question where

22   regardless of whether or not you are relying on it as a

23   defense, we now have a question about the truthfulness of your

24   client whether or not he in fact did get that information from

25   lawyers.  And the only way we -- the only way to know that is

1    by the disclosure -- look.  I think it's a terrible situation.

2    I mean, I'm with you.  I practiced for a long time.  That's why

3    my frustration here is that it didn't appear during the course

4    of the questioning that you all did anything to get him to stop

5    disclosing this information in a manner that made the

6    information itself relevant to the plaintiff's case to prove

7    whether or not Mr. Jiang is telling the truth or not.

8         MR. HILL:  Your Honor, may I quickly -- I apologize.  I'm

9    trying to pull my transcript up.  But there are -- I think it

10   would be helpful to read some additional portions of the

11   transcript.  I'm having a slight technical issue, but if you --

12   the Court would bear with me for one moment.

13        THE COURT:  All right.  I'm good.

14        MR. HILL:  Brian, if you can beat me to it and send me

15   that, that would be great.  I'm having difficulty with the

16   connection on this side.

17        MR. BERNSTEIN:  Your Honor, while Mr. Hill's looking for

18   that, can I continue where I was going so we can be efficient

19   with our time?

20        THE COURT:  Mr. Bernstein, if you'll finish and Mr. Hill

21   can collect himself technologically.

22        MR. BERNSTEIN:  Yeah.  And, Rob, just let me know when you

23   find it and I'll shut up for a minute.

24        MR. HILL:  Yes, sir.

25        MR. BERNSTEIN:  So the issue here is that there's no like,

1  you know, grand big problem with potential waivers like

2  Mr. Hill talks about.  The witness could have been instructed

3  not to provide any of this testimony and he was not.  There was

4  one instruction on the record for the witness not to provide

5  testimony because of privilege, and the witness answered

6  anyway, and that testimony was not stricken.

7      But, Your Honor, it's just we -- this is the -- as you

8  said, the record now is what Mr. Jiang testified to.  And,

9  frankly, it's B.S.  This guy says he got these, you know,

10 opinions from random Chinese counsel and that the patents,

11 because they related to certain patents in a Central District

12 case, they're the same even though they have different -- it's

13 egregious, Your Honor, and we want to use this at trial to

14 affirmatively prove our willful infringement case.  And what

15 defendants are saying is, no.  Let's just forget any of that

16 happened even though there's all this testimony, it's part of

17 the record, it's sworn testimony.  We don't want you using any

18 of that stuff at trial because it really, really, really hurts

19 their case.  That's why they don't want any of this testimony

20 in the record.

21      THE COURT:  Mr. Hill?

22      MR. HILL:  Yes.  So first of all, I'm still pulling up the

23 transcript.  First of all, I disagree in terms of the egregious

24 bit.  After the deposition we spoke, and there are written

25 materials from actual Chinese counsel related to all of this,

—20—

1   which is something that is -- it's demonstrably true if we have

2   to do like an in camera disclosure or something because I'm

3   obviously very concerned about the scope of potential waiver

4   here if it's all former trial counsel on this.

5        And so in terms of what I said when I was defending this

6   deposition during the trial (sic), I directed not to answer and

7   I also at multiple points specifically said that the opinion --

8   so I said -- when Matt continued to press in this way, I said,

9   Matt, with respect to document, we'll have to talk off line.

10  My understanding is that prior counsel has not asserted a

11  formal opinion of counsel point.

12       Mr. Jiang, as he's saying, is not an attorney.  We'll have

13  to understand the full privilege ramifications of the documents

14  he's talking about because I wasn't clear -- I wasn't clear

15  what he was saying.  But particularly to the extent of not

16  being relied upon as a formal matter is a legal opinion in the

17  way that defendants do.  So sometime -- so we'll take under

18  advisement, but we'll have to talk about that.  Matt objected

19  to this and Matt says, well, we're being sandbagged.

20       And I said, Matt, again, I have to say we have a non

21  lawyer witness who's being asked a number of questions and

22  we're giving you some leeway to do so, but, I mean, the

23  position of the company at this point, from everything I've

24  seen, is that a formal opinion is not what we are talking

25  about.  To the extent -- to the extent they've had

1   conversations privately with Chinese counsel and largely in the

2   context of the witness explaining the key -- his personal role

3   is not to evaluate these things.  He's talking through some of

4   these things through an interpreter.  You know, I object to

5   the (inaudible) position.  I'm not saying we're relying on any

6   opinion or anything like that.  I'm saying to the extent we're

7   talking about like an opinion of counsel for the purpose of

8   willfulness, I don't believe the company's taking that position

9   in previous statements to Super.  Again, we're new counsel

10  here -- previous counsel.  We've confirmed that that wasn't the

11  case.

12       And by the end of the deposition again I reiterated,

13  again, the company is -- let's see.  Ms. -- Matt, before we

14  shift gears, I need to object.  Again, you know, I'm not sure

15  the full universe of documents we're talking about.  It sounds

16  like some of the materials we're talking about may well have a

17  common interest or otherwise privilege involved.  To the extent

18  I can help short circuit this, I can confidently tell you that

19  Mr. Jiang is not going to be put up as any sort of technical

20  noninfringement position expert.  Again, the company's not

21  relying on opinion of Chinese counsel.  And I don't believe any

22  position like former opinions of any sort is the matter.  If

23  there's some rog response or something like that, we can talk

24  about it, but, again, that's not our position.

25       And then after the deposition to the extent Matt talks

1    about clawback, we made it very clear that our position is any

2    communications with Chinese counsel are not at issue in the

3    case or are privileged.  If we need to do an in camera review

4    or something like that to provide the materials that Jack Jiang

5    referenced now that we clearly understand what they were, I

6    mean, we can certainly do that if -- you know, my position

7    would be that this is an issue ultimately that could be

8    resolved through the proper kind of limine even if it just

9    comes down to -- we can work with any number of things, but I'm

10   just very concerned that since we have a non lawyer, non legal

11   witness but who's not taking a position for the purpose of

12   defense, because none of the defendants are putting forth this

13   opinion of counsel defense.  I'm just very concerned about what

14   that would mean, especially since I did make it clear on the

15   record we weren't taking that position.  We instructed the

16   witness not to answer and were trying to be helpful but at the

17   same time had made it clear even at the time and immediately

18   after that this is not the kind of thing that the defendants

19   are actually relying on as a formal matter.

20          MR. BERNSTEIN:  So, Your Honor, what this is -- it's a

21   complete straw man argument that Mr. Hill just made.  The

22   witness was asked:  What did you do upon learning of these

23   patents?  He said that he went to his lawyers, Chinese and U.S.

24   lawyers, got opinions.  Those counsel said that there was no

25   infringement of the patents-in-suit and those patents were

1   invalid.  Of course he's not a technical expert on

2   infringement.  We're not saying that he is.  But what he --

3   what this witness said was he got these opinions.  He was told

4   there was noninfringement and he said he felt he was fine in

5   doing what he was doing.  This is a classic case of -- he

6   provided this testimony.  This is the testimony, the record.

7   Whether they -- if I were them, I wouldn't rely on those

8   opinions of counsel either because as I said, they're garbage,

9   and we have the right to probe those.  Apparently now

10  Mr. Hill's saying he actually has seen these opinions of

11  counsel.  We haven't.  All we have is the witness saying that

12  he got a noninfringement and invalidity opinion from these

13  counsel and he relied on that stuff.  And so this technicality

14  of, hey, we're not going to formally say we're relying on an

15  opinion of counsel defense, who cares?  They waived privilege

16  during the deposition clearly, unequivocally, unambiguously.

17  They never clawed back any of that testimony.  They never said,

18  we want this stricken, we want to go to the -- if you're not

19  going to strike this, if you're not going to treat this as

20  privileged, we're going to the judge.  They did none of that,

21  Your Honor.  I mean, this is a clear case of shield/sword.

22  They want to have their witness -- they want to go to trial

23  like, look.  We're these good defendants.  We didn't do

24  anything wrong.  They don't want us using any of the testimony

25  that shows that they were egregious, they were willfull.

24

1    That's record testimony.  We should be able to use that at

2    trial.  We should be able to get all of the evidence related to

3    those opinions and use that at trial.

4        THE COURT:  Anything else, Mr. Hill?

5        MR. HILL:  I mean, I think I would just continue to say --

6    you know, my personal position would be that to the extent that

7    we're not raising this, and we're not, as an opinion, it's one

8    less defense for our side.  If -- and that's, I think, all I

9    can say on that point.

10       So I -- what -- the clawback thing though.  I do have to

11   say repeatedly in the discussions leading to this we made it

12   clear that our position was that that was confidential

13   attorney/client privilege information, it's not being relied

14   on, it's not something that -- and, again, we agreed not to

15   call witnesses on this, not -- that's why I don't -- even if

16   you rule against us, Your Honor, the sword/shield thing when

17   we've made all kinds of affirmative representations that we --

18       THE COURT:  Mr. Hill, I'm with -- I'm actually with you.

19   I don't think it's a shield.  I mean, I don't think it's a

20   shield/sword thing in the sense that I think you have the power

21   to say we're not going to use it and therefore the shield/sword

22   analogy doesn't work that well.  But what I do have in front of

23   me is a record where your witness testified that -- of what he

24   did and what he communicated to the -- if you'll help me with

25   her name.  I've forgotten.  Is it a woman?

1          MR. BERNSTEIN:  Ms. Gan.

2          THE COURT:  And what he communicated to her, which I think

3     the jury would be interested in, we now have -- we now have

4     this:  The plaintiff has to prove their willfulness cases.  And

5     to do that they have to say that once you all had notice of the

6     suit, what did you do to not either infringe, continue to

7     infringe or what did you do?  Obviously something you -- they

8     have done is hired you.  You're defending the case vigorously,

9     all that.  But in addition to that, the record now says -- we

10    now have your witness on the record testifying that what we did

11    was we talked to counsel, and there's no objection.  There was

12    no motion to strike, there was nothing in the record.  It just

13    is your guy going on and on several times repeatedly about

14    these communications.  And so his veracity of what he did I

15    think is something that is called into question because of what

16    he testified to.  So it seems to me that what the plaintiff is

17    entitled to is -- and it may be narrower than what they want,

18    but it gets -- it's to get there, which is anything that you

19    have, any communications you have that support what your

20    witness said need to be turned over to the plaintiff.  And if

21    in the end you turn over nothing to the plaintiff, then the

22    plaintiff will be able to show his testimony and the jury will

23    know that there wasn't anything that supported it.  But

24    whatever it is that -- whatever communications you have,

25    whatever there is that either Chinese counsel did or that --

1   tell me again the name of the firm.

2       MR. BERNSTEIN:  Radulescu.

3       THE COURT:  Whatever they did in the communication

4   e-mails, whatever -- if he says, I looked at something --

5   whatever it is that would -- that relates to and supports his

6   testimony that he gave at that deposition needs to be turned

7   over to the plaintiff.

8       MR. HILL:  Yes, Your Honor.

9       MR. BERNSTEIN:  Your Honor, a point of clarification.

10      THE COURT:  Yes.

11      MR. BERNSTEIN:  I think he said it was communications as

12  well as the underlying documents themselves, the analysis of

13  the patents is --

14      THE COURT:  Anything that -- whatever it is that this

15  gentleman relied on to form -- to be able to testify truthfully

16  as to what he said, you get.

17      MR. BERNSTEIN:  And, Your Honor, what about another

18  deposition after that's produced of -- assuming there are

19  documents, because we know from the deposition he had them on

20  his laptop.  He had some of these documents on his laptop at

21  the deposition.  So we know that some of these exist.  So we

22  would like another deposition of Mr. Jiang and Ms. Gan, the CEO

23  who we talked to as well as -- I mean, ideally I'd like to talk

24  to the Chinese counsel and Radulescu about --

25      THE COURT:  You're not going to get to do that, but --

1   because that's not inculcated here in my opinion.  But if --

2       Mr. Hill, I would suggest to you that if there are

3   documents from counsel that were on Mr. Jiang's laptop, that's

4   a pretty good indication that those ought to be turned over to

5   plaintiff's counsel because those sound to me like documents he

6   was saying he relied on.

7       MR. HILL:  Yeah.  We will confirm that.  I believe that

8   the documents he was talking about were different than the ones

9   on his laptop, but I understand what the Court's ruling is and

10  we'll be able to provide that information.

11      THE COURT:  And you'll -- counsel for plaintiff, you'll

12  get another deposition for sure of Mr. Jiang.  If during the

13  course of the deposition in your questioning of him he says

14  something after you have the documents or he says something

15  that makes it relevant for you to have another deposition of

16  Ms. Gan, you can do that as well, but it will only be if you --

17  if there's something that he says during the second deposition

18  that makes it necessary for her to be deposed again.

19      MR. BERNSTEIN:  Okay.  Thank you, Your Honor.

20      THE COURT:  And earlier, Mr. Bernstein, you said something

21  that concerned me as well which was that she testified -- and

22  this is a different subject -- that she testified during her

23  deposition that she never searched for any documents, and that

24  concerns me as well.  Is that an issue that you wanted to bring

25  up with me?

1      MR. BERNSTEIN:  Yeah.  That's the next issue, Your Honor.

2      THE COURT:  Okay.  Let's turn to that then.

3      (Clarification by the reporter.)

4      THE COURT:  Mr. Bernstein gets very passionate whenever

5  he's advocating.

6      MR. BERNSTEIN:  You know, these are exciting discovery

7  issues.  It's true.  Passionate.

8      So, Your Honor, the second issue deals with just the

9  Chinese defendants.  Again, he's -- CH Lighting and Ruising,

10  these are companies that are in China.  And the second issue

11  just deals with some of the most basic discovery obligations

12  that we feel were not met.

13      As you know, Ms. Gan is one of the key -- if -- in our

14  view, if not the key witnesses in the case, she is the one who

15  received the presuit notice identifying the patents-in-suit.

16  She is the one that testified -- at her deposition she said

17  everyone reports to her.  I mean, this is a, you know, Chinese

18  company.  She's the boss.  Ultimately she makes all the

19  decisions of the company.

20      You know, before her deposition we were a little befuddled

21  that we didn't actually have any of her documents.  And so at

22  the deposition --

23      THE COURT:  What do you mean you didn't have any of her

24  documents?  Are you saying -- what is -- no documents that were

25  produced from her file, no documents that were produced that

1   were correspondence with her?  What do you mean no documents

2   from Ms. Gan?

3        MR. BERNSTEIN:  I mean yes and yes to your two questions.

4   I mean, she was not listed as a custodian for a single

5   document, and even the pre-suit notices that had been sent to

6   her, we produced copies of those.  She did not -- or the

7   defendants did not produce those until after her deposition

8   when finally apparently she took the time to look for the

9   documents and actually produced them.  So we had nothing.  And

10  so at the deposition, Your Honor -- and let me -- again let me,

11  if I can competently do this, which is questionable.

12       So let me go down to this.  So at the deposition I asked

13  her about whether she searched for documents, and this is her

14  first response:  I'm not going to answer this.  This relates to

15  what I do for my work.  This is my personal matter.

16       You know, initially she refused.  And then I actually --

17  you know, I asked her again:  Did you -- at any point in time

18  did you search for any documents or files related to any of the

19  issues in this case?

20       I did not.

21       So nobody over the last year and a half asked you to

22  search for files, documents or anything else related to the

23  issues in this case?

24       No.

25       Have you been preserving and maintaining your documents

1   related to the issues in this case?

2       No.

3       And, you know, there's more of that.

4       And so that's just not okay, Your Honor.  I mean, in

5   general -- you know, I don't want to -- I don't want to

6   overgeneralize it, but I think many of us when dealing with

7   discovery of Chinese companies deal with situations like this

8   where there's just no minimal effort to comply with your

9   discovery obligations, and this is the most -- this is a key

10  witness.  This is the most basic of obligations which is to

11  look for documents.

12      Now, the other side's going to say, you know, even though

13  she's the CEO, she doesn't really have that many documents and,

14  you know, so there's not much to produce.  And Ms. Gan, to a

15  certain extent, testified that way at trial, but, I mean,

16  that -- that doesn't excuse what you're seeing in front of you,

17  Your Honor.

18      And in addition, Ms. Gan testified that she had -- Ms. Gan

19  testified that she had a secretary, Ms. Qian Jianrong, and that

20  for any important meetings this secretary would produce or

21  would take notes of the meetings.  So we didn't even know this

22  person existed until the deposition.  We certainly have not

23  gotten any notes from any meeting in any way related to the

24  litigation from this woman.

25      And, you know, it's not an isolated incident.  This is

1  actually testimony from Mr. Jiang from his deposition where

2  he's basically saying, you know, I feel strange about it like

3  us not having some of the documents he was testifying about it

4  because he said that he's talking with his counsel all the time

5  about this stuff.

6       And so somewhere, Your Honor, there has been, you know,

7  lost in Chinese translation figuratively, we're not getting the

8  documents that we were supposed to get.  And so after Ms. Gan's

9  deposition we did get -- we did get some additional documents.

10 You know, to Mr. Hill's credit, he went back and apparently --

11 you know, Ms. Gan and others were asked to actually search for

12 some documents, and, you know, here's a list of what we got,

13 but let me go to the next slide.

14      There are a bunch of documents without question we would

15 have asked -- these were produced after her deposition after

16 the close of fact discovery that we would have actually used

17 with Ms. Gan at her deposition.  This includes profit

18 information for CH Lighting and Ruising.

19      If you remember the last discovery hearing, Your Honor,

20 defendants' counsel -- defendants' previous counsel stood up in

21 front of you or sat down in front of a Zoom in front of you and

22 said, we do not track profit information for the accused

23 products.  Well, it turns out they actually did.  Ms. Gan

24 testified about that at her deposition and, lo and behold, we

25 get the information after her deposition.

1          We also got this market video which Ms. Gan stars in.  We

2    also received -- we finally received a copy of the pre-suit

3    notice from her files.  We also -- she testified about how she

4    called and she relied on suppliers such as DIO and Lumixess to

5    kind of, you know, take care of issues in the litigation.  They

6    finally produced those agreements as well.  This is all stuff

7    that we would have actually used at her deposition that we

8    weren't afforded the opportunity to do so.

9          And so what we want here, Your Honor, is we want another

10   deposition of Ms. Gan on this stuff and frankly the privileged

11   stuff too that's been waived, but at least on this stuff -- and

12   at this point because the CEO of the company admitted under

13   oath she never at any point in discovery searched for any

14   documents, did any -- was asked to search for documents, we

15   want a 30(b)(6) witness to testify about exactly what they did

16   across the board with their document collection, preservation,

17   sources of information, all of that stuff because, frankly --

18   and I'm not -- I'm not blaming Mr. Hill on this -- on this one

19   at least because I believe that, you know, what you have is

20   people in China doing whatever they want to do in China and not

21   complying with what they're supposed to be doing, and I want

22   someone under oath actually testifying as to what was actually

23   done so I can have some, you know, surety in my own mind that

24   there was, you know, some sort of compliance with the discovery

25   obligations.

1        Thank you, Your Honor.

2        THE COURT:  Mr. Hill?

3        MR. HILL:  Your Honor, thank you.

4        So first I want to take this a step at a time.  With

5   respect to Ms. Gan, the testimony is that she in fact does not

6   herself hold documents.  She testified at some length that she

7   basically gets verbal representations and the like.  There was

8   a great deal of emphasis during her deposition with respect to

9   the let's say notice of patents e-mail chain.  And Ms. Gan --

10  those e-mails were in English.  Ms. Gan testified that in

11  addition to not regularly using e-mail, she does not read or

12  understand English.  There was no -- this Court doesn't have a

13  default e-mail discovery protocol, and none was agreed to prior

14  to our involvement with the case.  One --

15       THE COURT:  Mr. Hill, I'm going to -- I'm going to cut

16  through this.  Here's what we're going to do.  I think the

17  deposition of a 30(b)(6) witness is the appropriate place to

18  start.

19       And I have for some reason up on my screen something that

20  says Dan Shvodian on it.  I'm not sure whose screen is being

21  shared with me.  But -- I don't know if it's Mr. Bernstein or

22  who.

23       But what we're going to do is in the very near future

24  Mr. Bernstein is going to take a -- no more than four hours

25  30(b)(6) of your client about the way documents were collected

34

1   for this case.  Once that's done, if there is a reason to

2   believe -- and, look.  I've done this.  I represented Asian

3   companies where the CEO is important but would never --

4   wouldn't look for anything.  He wouldn't know where anything

5   was.  So I get that.

6       But after we have a 30(b)(6) of how documents were

7   collected and her role in them why she would or would not have

8   any role in the collection, then if Mr. Bernstein is concerned

9   that she should have -- that she should have collected

10  documents and that there might be more if she were ordered to

11  do so, you know, you can come back quickly and I'll take that

12  up or you can just say, oh, gosh.

13      Look.  I'm sure you've talked to her at length about this.

14  I'm sure you know -- I'm sure you coordinated with her how her

15  information was collected, and it just may be that, you know,

16  she didn't have any -- you know, I might have my law clerks

17  collect things for me and I wouldn't do anything because I

18  can't find it myself.  I get that.

19      But once that's put to bed, we are -- I am going to -- you

20  all get together, and if Mr. Bernstein believes that there was

21  some -- there were buckets of information that were not sought

22  for during discovery that should have been, Mr. Hill, I would

23  encourage -- and you'll know it when you hear it -- that you --

24  clearly you went back and got more information which is what I

25  would have hoped you would have done and you did.

1      When all that is done and Mr. Bernstein is satisfied that

2  he has the universe of documents that he ought to have, then I

3  am going to allow a second deposition of -- is it Ms. Gan?

4      MR. BERNSTEIN:  Gan.  Yes.

5      THE COURT:  I am going to allow a second deposition of

6  Ms. Gan.  I'm going to make it eight hours -- I'm sorry --

7  seven hours, but part of the reason is I'm assuming -- Mr. Hill

8  will correct me if I'm wrong -- I'm assuming she speaks

9  Mandarin, not English.

10     MR. HILL:  Yes.

11     THE COURT:  Which means the deposition takes twice as

12  long, and so -- it just takes longer.  I get that.

13     So I'm going to allow a second seven hour deposition of

14  Ms. Gan, but I would not take it, Mr. Bernstein, until you feel

15  comfortable that you have all the documents that you should

16  have in the case.  If upon -- after taking a 30(b)(6) you have

17  concerns that Mr. Hill can't address about getting you

18  documents, let my clerks know and we'll have another hearing,

19  because I only want there to be one more deposition of Ms. Gan,

20  meaning I want you to have all the information that you need to

21  take her deposition successfully.

22     So -- Mr. Hill, yes.

23     MR. HILL:  Your Honor, I want to raise something very

24  quickly.  So with respect -- the other major bucket of

25  documents we're aware of relate to a certain IPO that's

1    ongoing.  We followed up, and the documents he's talking about

2    don't entirely exist yet.  CH has committed to produce, for

3    example, a prospectus that's part of that IPO that she was

4    talking about.  But it doesn't actually exist yet.  So I just

5    want to raise that now that -- I mean, we'll do the best that

6    we can with the documents that --

7         THE COURT:  Mr. Hill, I'm an important, powerful federal

8    judge, and there are those who I work with who tell me I can --

9    I can order you to do -- I mean, I can make you do anything.  I

10   can't make you provide things that don't exist.  That's -- and

11   if I ever come up with a way of doing that, I plan to patent it

12   and quit.  So -- or patent it and not quit.

13        But the bottom line is I'm just -- do the best -- you

14   know, if you have it and you -- in your opinion Mr. Bernstein

15   should have it, get it to him.  And all I want you to do is get

16   all of the collection done before you take Ms. Gan again,

17   because as much as I care for each and everyone who's on this

18   video, I would prefer not to have another conference unless

19   it's necessary about Ms. Gan's deposition.  And so that's what

20   I would do.

21        MR. HILL:  Thank you, Your Honor.

22        MR. BERNSTEIN:  Your Honor, I'll just point out that there

23   was also a -- almost 2019, 2020 IPO, and so documents related

24   to that, we would expect all of those.

25        But, Your Honor, can I ask a -- the -- can I request two

1    things with respect to these depositions?  One --

2         THE COURT:  Sure.

3         MR. BERNSTEIN:  -- that they be scheduled -- again, I

4    mean, we have trial coming up not too far from now.  And so a

5    little fire under the defendants in getting these witnesses to

6    Macau or wherever to the states, wherever they're going to be

7    brought to for these depositions would be greatly appreciated.

8    That's one.

9         And, two, I mean, we already deposed Ms. Gan and

10   Mr. Jiang, and so we would request that the -- you know, any

11   cost associated with a second deposition be borne by the

12   defendants, including translators and court reporters,

13   et cetera.

14        THE COURT:  Well, I'm not going to do that only because I

15   think what you're getting actually is additional information

16   and not curative information.  I think it's information that

17   your client would like, and so I'm not going to order the cost

18   at this time.  I mean, obviously if you adduce testimony during

19   the deposition that you might think would make me reconsider

20   that, at that time, it's -- I'm making this decision without --

21   I'm thinking that the information you're going to get is a

22   accretive, and that's a good thing for your client and your

23   client would want that anyway.

24        MR. BERNSTEIN:  Understood.

25        THE COURT:  If I'm wrong about that, let me know.

1    MR. BERNSTEIN:  Understood.

2    THE COURT:  And so is there anything else that we needed

3  to take up today?

4    MR. BERNSTEIN:  There is one additional relatively quick

5  issue, Your Honor, discovery issue, the third if we have

6  another couple of minutes.

7    THE COURT:  Sure.

8    MR. BERNSTEIN:  And so this issue relates to some public

9  statements made by Mr. Jiang, made by the defendants in this

10 case related to the litigation and related, frankly, to this

11 Court and an order that this Court did not actually make.  And

12 so the issue here -- let me see if I can -- let me see if I can

13 share again, Your Honor.

14    So the issue here is Your Honor might recall that he

15 granted defendants' motion for leave to amend their

16 counterclaims and defendants added inequitable conduct.  I

17 don't know.  It seemed like a million pages of inequitable

18 conduct allegations.  I think it was 250 or something like

19 that.

20    And so immediately after this we see reference to this

21 press release which in the title it says, you know, Radulescu

22 LLP, the patents were obtained through misconduct and fraud and

23 then, you know, Radulescu LLP announces an update to the patent

24 litigation between the parties.

25    So initially we're just like -- and my client's livid.  He

1  sees this, like that's entirely misleading.  Let's go to the

2  Court.  I said, no.  I mean, I don't know what's going on at --

3  what, you know, the relationship is, why these statements are

4  being made.  But what happens almost immediately after is

5  Mr. Jiang says, last time we obtained the judge's

6  acknowledgement that the other side's patents are acquired

7  illegally.

8       And that's just -- this is his public WeChat for -- where,

9  you know, all of his customers, all of his friends, everyone

10 else can see this.  This is simply a false statement.  It was

11 done for improper purposes and it was done to mess with Super

12 Lighting in the market, and it's just entirely inappropriate,

13 false and everything else.  And so at the deposition I asked

14 the witness about this.  And I said, you know, is this your

15 WeChat?

16      Yes.

17      And I asked him what the basis of that statement was, and

18 this is something I restated based on what my previous law firm

19 Radulescu told me.

20      And he actually goes on to say, I said -- you know, are --

21 I say like -- or I asked him to explain why he believes this

22 statement's true.  I tell him that the statement's false, and

23 he says I didn't -- he says, Mr. Bernstein, I don't believe

24 you, and if you want to know why I made this statement, he

25 actually says, go talk to my counsel because they're the ones

1   who told me about this statement.

2        And so, again, no objection for privilege.  There is a

3   disclosure of attorney/client privilege communications.  We

4   think there's a waiver based on -- there is a waiver based on

5   that.  And, you know, again nothing claiming, you know,

6   clawback or anything like that.  And so this goes to

7   willfulness, this goes to egregiousness, this goes to the state

8   of mind of this witness, and we think it's relevant to the

9   litigation and we want more information.  We want the

10  communications between Mr. Jiang and his counsel related to the

11  statement in the press release based on that waiver.

12       THE COURT:  Mr. Hill?

13       MR. HILL:  So the -- I'll begin by stipulating that

14  certainly current counsel has no plans for any press release

15  issuing during the pendency of this case.

16       To the extent that Mr. Jiang was referring to a publicly

17  made statement by a prior counsel and mischaracterized it or

18  was sloppy in his characterization, we don't view that as a --

19  ultimately a privilege issue.  We also don't view it as being

20  particularly relevant but certainly not a privilege issue since

21  the basis for Radulescu's opinion is set forth in that public

22  statement that was made as part of that press release.

23       THE COURT:  Well, but your client -- and this isn't your

24  fault.  But your client is making statements to the press that

25  are completely inaccurate.  And he's saying -- and he's saying,

1  from what Mr. Bernstein said, when he's asked about them, no.

2  You're wrong.  They are accurate and this is is my basis for

3  getting to say it is my lawyer told me this.

4  　　　So, Mr. Bernstein, I'm going to allow you to -- at your

5  deposition of this gentleman to inquire whatever you want to

6  about the communications he had with whatever counsel it was

7  other than -- I want you to be very careful and leave out

8  anything with Mr. Hill or his firm that relate to discussions

9  about what to do about -- I want to make very clear on the

10 record to the extent he is saying attorney X -- I base the

11 statement on what attorney X told me, that's fair game.

12 　　　MR. BERNSTEIN:  Understood.  Understood, Your Honor.  And

13 this was Radulescu LLP.  Around this time he had been fired,

14 and I think this was his parting gift to everybody or his

15 parting gift involvement at least to everybody.

16 　　　So just to clarify, Your Honor, the -- as part of kind of

17 the production obligations, so we can fully ask Mr. Jiang about

18 this, the communications between Mr. Jiang and Radulescu LLP

19 related to this, can we have those produced?

20 　　　THE COURT:  Absolutely.  Well, not only between him,

21 between Radulescu and anyone at defendant that relate to this

22 issue.

23 　　　MR. BERNSTEIN:  Okay.  Thank you, Your Honor.

24 　　　That's all that we have.  And, again, I appreciate the

25 time, given how busy you are.

1      THE COURT:  No.  I shouldn't even get paid for getting to

2  talk with lawyers as good as you guys are.  I should give the

3  government a free hour.  I always enjoy being in front of -- I

4  ought to figure out a way I can not get paid for the great

5  lawyers and get paid triple for some of the others.  But I'm

6  not sure how that would work.  So...

7      MR. BERNSTEIN:  Good luck finding that patent or getting

8  that patent that you talked about, Your Honor.

9      (Laughter.)

10      THE COURT:  Well, if you know anyone who does patent work,

11  let me know.

12      So is there anything else I need to take up for plaintiff?

13      MR. BERNSTEIN:  Nothing for the plaintiff, Your Honor.

14      THE COURT:  Mr. Hill?

15      MR. HILL:  No, Your Honor.

16      THE COURT:  Okay.  Thank you all for being here.  I look

17  forward to seeing y'all in person at some point in the future I

18  hope.

19      Mr. Hill, good luck with the merger with Thomas Knight

20  which is a wonderful firm.

21      MR. HILL:  Thank you, Your Honor.

22      THE COURT:  Take care, everyone.  Bye.

23      (Hearing adjourned at 11:24 a.m.)

24

25

```
 1  UNITED STATES DISTRICT COURT )

 2  WESTERN DISTRICT OF TEXAS    )

 3

 4       I, Kristie M. Davis, Official Court Reporter for the

 5  United States District Court, Western District of Texas, do

 6  certify that the foregoing is a correct transcript from the

 7  record of proceedings in the above-entitled matter.

 8       I certify that the transcript fees and format comply with

 9  those prescribed by the Court and Judicial Conference of the

10  United States.

11       Certified to by me this 13th day of July 2021.

12
                                /s/ Kristie M. Davis
13                              KRISTIE M. DAVIS
                                Official Court Reporter
14                              800 Franklin Avenue
                                Waco, Texas 76701
15                              (254) 340-6114
                                kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25
```