**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. AND OBERT, INC., Plaintiffs, ) ) ) ) | |
| v. ) | CASE NO.:  6:20-cv-00018-ADA |
| CH LIGHTING TECHNOLOGY CO., LTD., ELLIOTT ELECTRIC SUPPLY INC., AND SHAOXING RUISING LIGHTING CO., LTD., Defendants. ) ) ) ) ) ) | **JURY TRIAL DEMANDED**  <br><br>**<u>PUBLIC VERSION</u>** |

**DEFENDANTS' MOTION TO EXCLUDE**
**<u>CERTAIN OPINIONS OF DR. BRIAN D'ANDRADE</u>**

CONTAINS MATERIAL DESIGNATED
**HIGHLY CONFIDENTIAL: ATTORNEYS' EYES ONLY**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   LEGAL STANDARD............................................................................................1

III.  DR. D'ANDRADE'S REPRESENTATIVE PRODUCT ANALYSIS IS
      DEFICIENT IN NUMEROUS RESPECTS........................................................2

   A.   Dr. D'Andrade's Infringement Charts Feature No Product-Specific
        Representativeness Analysis.........................................................................4

   B.   The D'Andrade Report's Identification of Accused Products Is Incompatible with
        Dr. D'Andrade's Charts................................................................................7

   C.   Ms. Kindler's Damages Report Identifies Additional Accused Products Not
        Discussed by Dr. D'Andrade. .....................................................................13

IV.   DR. D'ANDRADE'S OPINIONS ON THE ████████████████████
      SHOULD BE EXCLUDED...............................................................................15

V.    CONCLUSION...................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Burleson v. Texas Dep't of Criminal Justice*,
   393 F.3d 577 (5th Cir. 2004) ......................................................................2

*Commissariat a L'Energie Atomique v. Samsung Elecs. Co.*,
   524 F. Supp. 2d 534 (D. Del. 2007)............................................................3

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).......................................................................... *passim*

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...............................................................................2, 18

*Johnson v. Arkema, Inc.*,
   685 F.3d 452 (5th Cir. 2012) ......................................................................2

*KAIST IP US LLC v. Samsung Elecs. Co.*,
   439 F. Supp. 3d 860 (E.D. Tex. 2020)........................................................4

*Medtronic Vascular, Inc. v. Bos. Sci. Corp.*,
   No. CIV. A. 2:06-CV-78, 2008 WL 2744909 (E.D. Tex. July 11, 2008) ................3

*Moore v. Int'l Paint, L.L.C.*,
   547 F. App'x 513 (5th Cir. 2013) ..............................................................19

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008)...................................................................1

*Sung v. Shinhan Diamond Am., Inc.*,
   No. CV 14-530-MWF(EX), 2015 WL 12681308 (C.D. Cal. Feb. 25, 2015)...........3

*TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*,
   629 F. App'x 916 (Fed. Cir. 2015) ..............................................................2

*United States v. Fullwood*,
   342 F.3d 409 (5th Cir. 2003) ......................................................................2

*Viterbo v. Dow Chem. Co.*,
   826 F.2d 420 (5th Cir. 1987) ................................................................4, 12

**Statutes**

Federal Rule of Evidence 702.................................................................1, 2, 4

**TABLE OF EXHIBITS**

| Exhibit No.[1] | Description |
|:---:|:---|
| 1 | Expert Report of Brian D'Andrade, Ex. C-1 |
| 2 | Expert Report of Brian D'Andrade |
| 3 | Expert Report of Brian D'Andrade, Ex. E-1 |
| 4 | Expert Report of Brian D'Andrade, Ex. H-4 |
| 5 | Expert Report of Brian D'Andrade, Ex. B-6 |
| 6 | Expert Report of Lauren Kindler, Ex. 7-1 |
| 7 | Deposition Transcript of Brian D'Andrade |
| 8 | Expert Report of Brian D'Andrade, Ex. A-5 |

---

[1] Exhibits 1-8 are exhibits to the Declaration of Robert S. Hill, filed herewith.

Defendants CH Lighting Technology Co., Ltd., Elliott Electronic Supply Inc., and Shaoxing Ruising Lighting Co., Ltd. (collectively, "Defendants") hereby move to exclude the testimony of Plaintiffs Jiaxing Super Lighting Electric Appliance Co., Ltd. and Obert, Inc.'s (collectively, "Plaintiffs") technical expert, Dr. Brian D'Andrade, relating to representative accused products, as well as relating to the ████████████████, and to preclude Dr. D'Andrade from offering such testimony at trial.

## I.  INTRODUCTION

As set forth in his Report, Plaintiffs' technical expert, Dr. D'Andrade, plans to testify that a large number of accused LED tube lamp products meet the limitations of the eight patents-in-suit.  In his Report, Dr. D'Andrade only discusses a fraction of the hundreds of listed accused products with any degree of specificity.  And while Dr. D'Andrade asserts that the analyzed products are representative of numerous other non-charted products, he offers absolutely no analysis to justify this assertion.  Moreover, Dr. D'Andrade's analysis is subject to numerous internal inconsistencies, rendering it impossible for Defendants to even identify which products are accused of infringing a particular patent-in-suit.  Because Dr. D'Andrade's opinions regarding representative products are supported only by his own internally inconsistent *ipse dixit*, those opinions should be excluded under Federal Rule of Evidence 702.  Dr. D'Andrade also plans to testify regarding certain reverse engineering related to the ████████████████.  Because Dr. D'Andrade's anticipated testimony is conclusory and unsupported, those opinions should be excluded as well.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence assigns a gatekeeping role to the Court to ensure that an expert's testimony not only rests on a reliable foundation, but is also relevant and helpful. *See, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Sundance, Inc. v. DeMonte*

*Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008); *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003). The party offering the expert's testimony bears the burden of persuading the Court, by a preponderance of the evidence, that the testimony satisfies Rule 702. *See Daubert*, 509 U.S. at 591 n. 10; *Fullwood*, 342 F.3d at 412; Fed. R. Evid. 104(a). The Court "has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 458–59 (5th Cir. 2012).

An expert's qualifications and assurances alone are an insufficient basis for admission of an expert's opinions under Rule 702, and *ipse dixit* testimony is inadmissible. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Joiner*, 552 U.S. at 146); Fed. R. Evid. 702, Advisory Committee Notes (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). Speculative assumptions, conjecture, or reliance on facts that contradict the record are insufficient bases for expert testimony. *See Joiner*, 522 U.S. at 144-46; *TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*, 629 F. App'x 916, 934 (Fed. Cir. 2015); *Burleson*, 393 F.3d at 587 (affirming exclusion of opinion based on "speculation, guesswork, and conjecture").

## III.   DR. D'ANDRADE'S REPRESENTATIVE PRODUCT ANALYSIS IS DEFICIENT IN NUMEROUS RESPECTS

The meat of Dr. D'Andrade's infringement analysis is set forth in 48 charts that accompany his Report, each of which purports to explain how a particular accused product infringes the limitations of the asserted claims. In each of these charts, Dr. D'Andrade asserts that the specific product he analyzed is "representative" of numerous other, non-charted accused products in all respects that are material of infringement. But neither Dr. D'Andrade's Report nor his

accompanying charts provide any analysis to show why certain products are "representative" of others.

Plaintiffs bear the burden of establishing, by a preponderance of the evidence, that <u>each</u> accused product infringes the asserted claims. *See Medtronic Vascular, Inc. v. Bos. Sci. Corp.*, No. CIV. A. 2:06-CV-78, 2008 WL 2744909, at *3 (E.D. Tex. July 11, 2008) (discussing, in representative products context, "Medtronic's burden to prove infringement by a preponderance of the evidence for <u>each</u> accused product.") (emphasis in original). This burden may be met through reliance on representative products, but only after Plaintiffs establish that its proffered representative products are, in fact, representative. "A patentee, however, cannot simply assume that all of [the accused] products are like the one [plaintiff's expert] tested and thereby shift to [the accused infringer] the burden to show that is not the case." *Id.* (citing *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006)). *See also Commissariat a L'Energie Atomique v. Samsung Elecs. Co.*, 524 F. Supp. 2d 534, 541 (D. Del. 2007) ("Although a party may not be required to reverse engineer every module, the party must specify which modules are representative of a particular series or group, why they are representative and how their particular properties or components directly infringe each and every element of a claim."); *Sung v. Shinhan Diamond Am., Inc.*, No. CV 14-530-MWF(EX), 2015 WL 12681308, at *4 (C.D. Cal. Feb. 25, 2015) ("Moreover, the Court concludes that Plaintiffs have not provided an adequate explanation of why the claim charts are representative of all of the accused products. The claim charts do not place the accused products into categories or otherwise indicate if there are differences between the forty products that are relevant to their infringement allegations.").

The question of whether representative products testimony is reliable is a question of admissibility, not sufficiency, and thus is appropriately handled at the *Daubert* stage. *See, e.g.*,

*KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 877 (E.D. Tex. 2020) ("The reliability of [expert's representative products] analysis goes to the admissibility of Dr. Kuhn's opinion, not its sufficiency once offered.") (internal citations omitted).   And under *Daubert*, testimony cannot be reliable where it is unsupported by any analysis.  *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.").

As set forth above, the party proffering an expert's testimony bears the burden of persuading the Court, by a preponderance of the evidence, that the testimony satisfies Rule 702. *See Daubert*, 509 U.S. at 591 n. 10.   Plaintiffs cannot meet that burden with respect to Dr. D'Andrade's representative products analysis, because – as set forth in detail below – no such analysis exists.  As Dr. D'Andrade offers nothing beyond his own *ipse dixit* to demonstrate that the charted accused products are "representative" of the non-charted products, his testimony is unreliable, and must be excluded.

### A.    Dr. D'Andrade's Infringement Charts Feature No Product-Specific Representativeness Analysis.

Chart C-1 to Dr. D'Andrade's Report illustrates his lack of analysis.  This chart purports to show how the accused ███████████████████████ infringes asserted claims 41 and 43 of the '078 patent.  As can be seen from the excerpt below (highlighting added by Defendants), in the introduction to Chart C-1, Dr. D'Andrade asserts that the ██████████████████████ ██████ is "representative of" dozens of other, non-charted products.



Ex. 1 (D'Andrade Rep., Chart C-1) (highlighted text reads "For the reasons explained in my report, the ███████████████████ is representative of the manner in which the above-identified products infringe the asserted claims of the '078 Patent.").  As shown in Chart C-1 above, Dr. D'Andrade bases his representativeness assertion on ███████████████ ████████████████████████████████████████ ███████████████████ ████████████████████ are a good stand-in for the dozens of other tubes that he lists.  Nor does Dr. D'Andrade's Report ever explain why his comparison of the █████████████████████ features to the claims of the '078 patent should be carried over to other, non-charted tubes.  Indeed, Dr. D'Andrade's Report contains no discussion at all regarding why or how <u>any</u> product is representative of another product.

Dr. D'Andrade's complete lack of explanation is significant because, for purposes of assessing infringement, the components of each tube <u>matter</u>.  For example, claim 41 of the '078 patent recites a "first electronic component" and a "second electronic component," "wherein the first electronic component generates more heat than the second electronic component," and "wherein the first electronic component is disposed closer to the opening … of the first end cap than the second electronic component is." ███████████████████████ ████████████████████████████████████████



Ex. 1 (D'Andrade Rep., Chart C-1).

As can be seen from Dr. D'Andrade's annotations, the selection, arrangement, and precise positions of these electronic components are critical to the infringement analysis, as are the levels of heat generated by the selected components.  Yet Dr. D'Andrade purports to use this analysis as a stand-in for dozens of other, non-charted tubes.  Dr. D'Andrade makes no attempt to demonstrate that the circuit board of the ██████████████████████████ is materially identical to the circuit boards of the numerous other non-charted tubes.  To the extent that those other, non-charted tubes possess <u>different</u> circuit boards, with <u>different</u> electronic components arranged in <u>different</u> configurations, generating <u>different</u> levels of heat than the exact components and configuration measured by Dr. D'Andrade, those differences are material to whether the non-charted tubes infringe the '078 patent.  One cannot simply assume that those other, non-charted tubes feature

identical circuit boards with identical components that generate identical levels of heat, and, ███

███████████████████████████████████████████████████████

This is true for the other patents as well, which all require particular components arranged in a particular way.  For example, the asserted claims of the '140 patent and '479 patent require the use of certain integrated circuits (which are not present in the non-charted product series) and the asserted claims of the '700 patent require that the tube works with a ballast (which the non-charted product series is not capable of).  Likewise, the asserted claims of the '989 patent, '003 patent, and '078 patent requires a power supply having a resistor in a particular location, the '989 patent requires a capacitor that performs certain functions, and the asserted claims of the '078 patent, '003 patent, '540 patent, and '125 patent require specific end cap configurations, among other things.

To be clear, the deficiencies discussed above are not an outlier.  Each of Dr. D'Andrade's 48 charts is structured in the same way, without exception.  In producing charts for certain "representative" products, Dr. D'Andrade has swept in dozens of other products with no product-specific analysis, and with no ties to the charted products beyond Dr. D'Andrade's *ipse dixit*.  Dr. D'Andrade's attempt to sweep in broad swaths of products makes it impossible for Defendants (and the jury) to know how, or even if, a particular product is accused of infringing a particular claim.  This wholly unsupported analysis should be excluded.

**B.     The D'Andrade Report's Identification of Accused Products Is Incompatible with Dr. D'Andrade's Charts.**

Rather than clarifying matters, the material in the body of Dr. D'Andrade's Report only adds ambiguities.  In particular, Dr. D'Andrade's Report includes a section, entitled "Product Types," that purports to address representativeness in general terms.  *See* Ex. 2 (D'Andrade Rep.), at 49-57.  This section does not explain why the products analyzed in Dr. D'Andrade's charts are

representative of the non-charted products.  Rather, it presents a parallel identification of accused products, broken down by "CH Product Series" and "Patent Infringed."  This breakdown, which is reproduced below, is not connected to Dr. D'Andrade's charts in any discernable way, and in fact frequently contradicts those charts.



Ex. 2 (D'Andrade Rep.), at 52.

There are fundamental inconsistencies between Dr. D'Andrade's charts and the table in his Report; those inconsistencies render it impossible for Defendants to ascertain how—or even if—certain products are accused of infringing.  In particular, the product series set forth in Dr. D'Andrade's table do not line up with those set forth in his Charts.  These discrepancies can be seen in the chart below (created by Defendants based on Dr. D'Andrade's Report and charts), and are explained more fully below:



_____

[2] Specifically, the product series identified in the third column are those identified as infringing in Paragraph 132 of Dr. D'Andrade's Report.

| █████ | ████████████████ | ██████████████ |
|-------|------------------|----------------|
| ██ | ████ | ████████ |
| | ████ | ████████ |
| | ████ | |
| | ████ | ████████ |
| | ████ | ████████ |
| | | ████████ |
| | | ████████ |
| | | ████████ |
| ██ | ████ | ████████ |
| | | ████████ |
| | | ████████ |
| ██ | ████ | ████████ |
| | ████ | ████████ |
| | ████ | ████████ |
| | | ████████ |
| | | ████████ |
| | | ████████ |
| | | ████████ |
| ██ | ████ | ████████ |
| | | ████████ |
| ██ | ████ | ████████ |
| | ████ | |
| | ████ | ████████ |
| | | ████████ |
| ██ | ████ | ████████ |
| | ████ | ████████ |
| | | ████████ |



*See* Ex. 2 (D'Andrade Rep.), ¶ 132. The product series indicated in red above were either (1) charted by Dr. D'Andrade, despite not being identified as an accused product series in Paragraph 132 of his Report (the red-text entries in the center column; for example, the ███████ series); (2) identified as an accused product series in Paragraph 132, and identified in a chart but never actually charted by Dr. D'Andrade (the red-text entries in the right column; for example, the ███████ series); or (3) identified as an accused product series in Paragraph 132, but <u>not</u> <u>mentioned at all</u> in Dr. D'Andrade's corresponding charts (the bolded purple-text entries in the right column; for example, the ███████ series).

To elaborate on this third category, three product series (███████████████████████) are identified as an accused product series in Paragraph 132 of Dr. D'Andrade's Report, but are <u>not</u> <u>even mentioned</u> in any of the accompanying claims charts. As such, there are fundamental ambiguities as to what claims these products are even accused of infringing. For example, Paragraph 132 of Dr. D'Andrade's Report identifies the ██████ product series as infringing the '125, '540, and '989 patents. But no products from the ██████ product series are ever mentioned in Dr. D'Andrade's charts for those three patents. The same is true of the ██████ product series, which is identified as infringing the '540 and '989 patents but not referenced in those charts, and of the ██████ series, which is identified as infringing the '700 patent but not

referenced in the sole chart for that patent. *Compare* Ex. 2 (D'Andrade Rep.), ¶ 132 *and* Ex. 3 (D'Andrade Rep., Chart E-1). Thus, for these products it is entirely unclear what claims these products allegedly infringe, or which charted products are even purportedly representative of these products. Fundamentally, Defendants cannot ascertain with any degree of confidence which products are accused of infringing which claims of the patents. These discrepancies alone render Dr. D'Andrade's analysis inadequate.

The second category involves product series that Dr. D'Andrade identifies in Paragraph 132, but never charts. Rather, these product series (the red-text entries in the right column) are simply mentioned in Dr. D'Andrade's catch-all identifications at the beginning of charts analyzing products <u>from other product series</u>. In other words, Dr. D'Andrade frequently uses products from one product series (*e.g.*, the ███ product series) as a proxy for another product series (*e.g.*, the ███ product series), but with no analysis to explain why this is appropriate.

For example, in Paragraph 132, Dr. D'Andrade identifies three product series as infringing the '078 patent: ███████████. But of the eight products that Dr. D'Andrade charts for the '078 patent, not a single chart features a product from either the ██████████ series. Instead, Dr. D'Andrade charts only products from the ███ series, and simply asserts, without explanation, that those ███ products are representative of products from the ███████ series. *See, e.g.*, Ex. 1 (D'Andrade Rep., Chart C-1) (charting ███████████, a ███ product, as representative of ███████ products). Nowhere does Dr. D'Andrade either (1) analyze a ███ or ███ series product for purposes of the '078 patent; or (2) explain why the ███ series is an effective stand-in for those product series, for purposes of the '078 patent analysis.

Similarly, in Paragraph 132, Dr. D'Andrade identifies seven product series as infringing the '989 patent, but charts only two of those seven product series. Claim 13 of the '989 patent requires that the power supply have a capacitor that "cause[s] the LED tube lamp to conduct when voltage of the capacitor exceeds a threshold trigger voltage." In his charts, Dr. D'Andrade asserts that the charted ████████ █product is "representative" of the ██████ series for purposes of the '989 patent. ██████████████████████████████████████████████████████ ████████████████████████████████████████████████ But again, nowhere does Dr. D'Andrade either (1) analyze a ████████ █eries product for purposes of the '989 patent; or (2) explain why the ████████ series is an effective stand-in for the ██████ product for purposes of the '989 patent analysis. This is particularly concerning here, as the ██████ product was charted by Dr. D'Andrade with respect to other patents (namely, the '540 and '125 patents).



Ex. 4 (D'Andrade Rep., Chart H-4), at 5; Ex. 5 (D'Andrade Rep., Chart B-6), at 5.

As such, the discrepancies between Dr. D'Andrade's Report and his charts, as well as the lack of analytical connection between the two, prevent Defendants from understanding both which products are accused of infringing a given claim, and how those products are alleged to infringe. Because these opinions are "fundamentally unsupported," they offer "no expert assistance to the jury," *Viterbo*, 826 F.2d at 422, and should be excluded.

### C.     Ms. Kindler's Damages Report Identifies Additional Accused Products Not Discussed by Dr. D'Andrade.

Further confusing matters is the Report submitted by Plaintiffs' damages expert, Ms. Lauren Kindler.   Specifically, Ms. Kindler's damages calculations incorporate sales revenue from numerous product series that are not discussed—and for some, not even mentioned—in Dr. D'Andrade's Report or Charts.   The full list of products included by Ms. Kindler in her analysis are listed in Exhibit 7.1 to her report, which provides a breakdown of sales figures by product series.   *See* Ex. 6 (Kindler Rep., Ex. 7.1) (highlighting by Defendants).   <u>Nearly half</u> of the product series listed in this Exhibit (those highlighted in yellow by Defendants) are not charted, discussed, or addressed anywhere in Dr. D'Andrade's Report or Charts.



Ex. 6 (Kindler Rep., Ex. 7.1) (highlighting by Defendants); Ex. 2 (D'Andrade Rep.), ¶ 132.

As can be seen, eleven of the product series included by Ms. Kindler are neither named in Paragraph 132 to Dr. D'Andrade's Report nor analyzed (or even listed) in his Charts.  Five of these product series (████████████████████████████████) bear "██" nomenclature, despite the fact that no "██" products are listed or discussed anywhere in Dr. D'Andrade's Reports or Charts.  It is entirely unclear which patents and claims these products

are even accused of infringing, not to mention <u>how</u> they allegedly infringe. Neither Dr. D'Andrade nor Ms. Kindler should be permitted to testify as to product series that are completely unexplained.

*       *       *       *       *

As such, Defendants request that the Court exercise its gatekeeping function and exclude the testimony of Dr. D'Andrade insofar as it is premised on his non-existent representative products analysis. Specifically, Defendants request that the Court limit Dr. D'Andrade's testimony to those products that he <u>actually</u> analyzed and wrote up in his Report or Charts, and exclude testimony as to products that were referenced in Dr. D'Andrade's Charts, but never analyzed or explained. Defendants also request that the Court exclude any testimony from Dr. D'Andrade that relates to any product series that are not discussed or even mentioned in any of his claims charts for a given asserted patent. Further, Defendants request that the Court exclude any testimony from Ms. Kindler that is premised on an identification of accused products that goes beyond Dr. D'Andrade's analysis.

## IV.   DR. D'ANDRADE'S OPINIONS ON THE ███████████████ SHOULD BE EXCLUDED

Plaintiffs also offer Dr. D'Andrade's testimony to support their argument that products possessing the ███████████████ infringe the '140 patent. But Dr. D'Andrade's analysis on this issue falls short. Namely, Dr. D'Andrade's opinions do not satisfy the reliability prong of *Daubert* because they constitute impermissible *ipse dixit*. Specifically, Dr. D'Andrade relies on simplified schematics and analytical assumptions that purportedly derive from a reverse engineering of the ███████████████. But there is nothing in Dr. D'Andrade's Report explaining how that reverse engineering process led to those conclusions. As such, those conclusions are inadmissible under *Daubert*. "[T]he expert's testimony must be reliable at each

15

and every step or else it is inadmissible.  The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, <u>the link between the facts and the conclusion</u>." *Knight*, 482 F.3d at 355 (5th Cir. 2007) (internal citations omitted) (emphasis added).

In his Report, Dr. D'Andrade explains the reverse engineering process that was supposedly conducted with respect to the ████████████████. *See* Ex. 2 (D'Andrade Rep.), ¶¶ 148-154. This process purportedly involved a number of tests and analyses. ████████████████





Put simply, Dr. D'Andrade's report only states the conclusions, offering none of the steps necessary to reach those conclusions.   There is simply no testing or analysis, other than Dr.

D'Andrade's *ipse dixit*, tying the reverse engineering to Dr. D'Andrade's simplified schematics. This is not enough to survive *Daubert*.   *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").



███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

"When an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)). As such, Dr. D'Andrade's testimony that products possessing the ███████████████ infringe the '140 patent should be excluded.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court limit Dr. D'Andrade's testimony to those products that he actually analyzed and wrote up in his Report or Charts, and exclude testimony as to products that were referenced in Dr. D'Andrade's Charts, but never analyzed or explained. Defendants also request that the Court exclude any testimony from Dr. D'Andrade that relates to any product series that are not discussed or even mentioned in any of his claims charts for a given asserted patent. Further, Defendants request that the Court exclude any testimony from Ms. Kindler that is premised on an identification of accused products that goes beyond Dr. D'Andrade's analysis. Finally, Defendants request that the Court exclude Dr. D'Andrade's testimony that products possessing the ███████████████ infringe the '140 patent.

Dated: August 9, 2021                                   Respectfully Submitted,

                                                        */s/ Robert S. Hill*
                                                        Robert S. Hill (Lead counsel)
                                                        Texas Bar No. 24050764
                                                        Email: robert.hill@hklaw.com
                                                        Sara Schretenthaler Staha
                                                        Texas Bar No. 24088368

HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Telephone: (214) 964-9500
Facsimile: (214) 964-9501

Allison M. Lucier (*Pro Hac Vice*)
Massachusetts Bar No. 569193
Email: allison.lucier@hklaw.com
10 Saint James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850

Stacey H. Wang *(Pro Hac Vice)*
California Bar No. 245195
Email: stacey.wang@hklaw.com
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 896-2400

Leonie Huang (*Pro Hac Vice*)
New York Bar No. 5128442
Email: leonie.huang@hklaw.com
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3398
Facsimile: (212) 385-9010

**Counsel for Defendants**

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on August 9, 2021.

*/s/ Robert S. Hill*
Robert S. Hill