**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. AND OBERT, INC.,, <br><br> Plaintiffs, <br><br> v. <br><br> CH LIGHTING TECHNOLOGY CO., LTD., ELLIOTT ELECTRIC SUPPLY INC., AND SHAOXING RUISING LIGHTING CO., LTD., <br><br> Defendants. | § § § § § § § § § § § § § § §  CASE NO. 6:20-CV-00018-ADA |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY OF THE '700 PATENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1
II.   LEGAL STANDARD.................................................................................................... 2
III.  THE '700 PATENT AND DAVENPORT ................................................................... 3
      A.   The '700 Patent ..................................................................................................3
      B.   The Davenport Reference ..................................................................................4
IV.   DEFENDANTS' MOTION FAILS TO DEMONSTRATE ANTICIPATION.............. 6
      A.   Defendants Fail at the Threshold Level to Demonstrate that Summary
           Judgement of Anticipation is Appropriate .........................................................6
      B.   Defendants' New Reliance Fails to Demonstrate Anticipation .........................8
V.    CONCLUSION.............................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**         **PAGE**

*Bd. of Regents, The Univ. of Texas Sys. v. Ethicon, Inc.*,
No. 1:17-CV-01084-LY, 2020 WL 3580147 (W.D. Tex. Apr. 15, 2020) .................................. 8

*DIRECTV Inc. v. Robson*,
420 F.3d 532 (5th Cir. 2006) .................................................................................................. 2

*Griffin v. United Parcel Serv., Inc.*,
661 F.3d 216 (5th Cir. 2011) .................................................................................................. 2

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) (en banc) .......................................................................... 2, 3, 4

*M Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
439 F.3d 1335 (Fed. Cir. 2006) .............................................................................................. 2

*Miss. River Basin Alliance v. Westphal*,
230 F.3d 170 (5th Cir. 2000) .................................................................................................. 2

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008) .............................................................................................. 6

*New YorkLtfe Ins. Co. v. Travelers Ins. Co.*,
92 F.3d 336 (5th Cir. 1996) .................................................................................................... 2

*Richardson v. Suzuki Motor Co.*,
868 F.2d 1226 (Fed. Cir. 1989) .............................................................................................. 6

*Wallace v. Texas Tech Univ.*,
80 F. 3d 1042 (5th Cir. 1996) ................................................................................................. 2

*Warfield v. Byron*,
436 F.3d 551 (5th Cir. 2006) .................................................................................................. 2

**STATUTES**

35 U.S.C. § 102 ............................................................................................................................. 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 2

I. INTRODUCTION

Defendants' motion for summary judgement of anticipation of the '700 Patent over Davenport should be denied because there is a genuine issue of material fact as to what Davenport discloses, as discussed by Plaintiffs' expert, Dr. Phinney, in his report and in his deposition.

To begin, Defendants fail to make a threshold showing that they have the evidence to demonstrate anticipation. Davenport teaches 13 separate LED tube lamps, and Defendants take a teach-one-teach-all approach for anticipation that suggests that mixing and matching certain embodiments would have been how a person of ordinary skill would have viewed Davenport's LED tube lamp. Not so, or at least there is a genuine issue of material fact, on this issue.

When the embodiments are reviewed, as Dr. Phinney has done, it is revealed that key limitations of the '700 Patent are not met. Namely, the claims of the '700 Patent require a double ended LED tube lamp, *i.e.*, one that receives power from both ends and operates in two separate power modes depending upon whether the power is provided via commercial power or via a ballast. Dr. Phinney testifies that Davenport does not disclose this. Dr. Phinney's analysis demonstrates that there is a genuine issue of material fact, and that this question should go to the jury.

Furthermore, the core of Defendants' motion is premised on out-of-context deposition testimony of Dr. Phinney on sections of Davenport ([0063]) that Defendants' expert, Dr. Lebby, never opined on. Given context, Dr. Phinney's testimony plainly supports the position that the claims of the '700 Patent are valid. Dr. Phinney stated that the embodiment described in [0063] of Davenport *can* be made to provide double ended power. But, he made clear that Davenport needs operator modification in order to do so and that operator intervention/modification is not covered by the '700 Patent's claims. Defendants bring up the first part of "can," but do not

provide the full context as to what Dr. Phinney said about operator modification. Importantly, Defendants' motion relies on [0063] of Davenport for the key limitations, which only Dr. Phinney had opined on. Under these circumstances, a reasonable juror when viewing the facts most favorably to Plaintiffs, could side with Plaintiffs and summary judgment is inappropriate.

## II. LEGAL STANDARD

The court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.,* 661 F.3d 216, 221 (5th Cir. 2011). The nonmovant must respond to the motion by setting forth particular facts indicating that there is a genuine issue of material fact for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted). If a genuine issue of material fact is raised, summary judgment will only be granted if no reasonable juror could find for the non-movant in light of the record, taken as a whole, together with affidavits show that there is no genuine issue. Fed. R. Civ. P. 56(a); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *New YorkLtfe Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *see also M Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact.'" *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id*. at 1075.

If the moving party meets this burden, the nonmovant must present admissible evidence that create a genuine issue for trial. *See Wallace v. Texas Tech Univ.*, 80 F. 3d 1042, 1047 (5th Cir. 1996). The nonmovant's burden may not be satisfied by "conclusory allegations,

unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557; *see also Little*, 37 F.3d at 1075. Factual controversies are to be resolved in favor of the nonmovant "when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### III. THE '700 PATENT AND DAVENPORT

#### A. The '700 Patent

The claims of the '700 Patent are directed to a double-ended LED tube lamp that can operate in two separate power delivery modes. The double-ended aspect of the LED tube lamp is depicted below. As can be seen below-left, the LED tube lamp has two separate ends, each having two pins. The pins are more easily seen in Fig. 3, below right.



The pins are used to receive power—and the circuity of the LED tube lamp is designed to operate—in two separate power supply modes. The first mode uses a low frequency signal for power, *e.g.*, a standard 120v, 60hz commercial power connection. *See* '700 Patent at 96:58-60; *see also Id.* at 3:1-2 (stating that "commercial electricity/AC mains" is much lower frequency than that from a ballast).[1] The second mode uses a device called an electronic ballast, which was used by legacy power delivery systems for older non-LED tube lamps. *Id.* at 96:58-60.

---

[1] The '700 Patent refers to U.S. Pat. No. 10,378,700 which was provided at Dkt. 139-02.

In the low frequency power mode, the LED tube lamp receives power through the two ends of the tube. Dkt. 139-02 at 96:59-62 (stating that power is delivered across "one of the first and second pins and the third pin," *i.e.*, across the ends of the LED tube lamp). In this mode, a "driving circuit" is used to drive the LEDs of the tube lamp. *Id.* at 96:53-55.

The electronic ballast mode also receives power across the two ends of the LED tube lamp. Dkt. 139-02 at 96:3-8. In this mode, however, the "driving circuit" is not used to drive the LEDs, *i.e.*, the electronic ballast does the driving. *Id.*

The other challenged claims include installation detection circuitry to detect a proper installation (Dkt. 139-02, claim 6 at 97:26-35), and further limitations regarding how the "driving circuit" is bypassed. Dkt. 139-02, claims 48-49 at 102:57-103:2.

## B. The Davenport Reference

Davenport similarly has an LED tube lamp that operates using either using commercial power or an electronic ballast. Dkt. 139-03 at Abstract.[2]

Davenport has thirteen separate hard-wired configurations. *See* Dkt. 139-03 at Fig. 11, [0070]-[0087]. Critical to its operation are the specific, and actual, hardware components of the "first conduction control means" 340 (annotated yellow) and "second conduction control means" 370 (annotated green). *See, e.g.,* Phinney Decl. at ¶ 6.[3] The hardware components chosen determines where and how power is delivered to Davenport's LED tube lamp.

---

[2] U.S. Pub. No. 2016/0113076 ("Davenport") was provided as Dkt. 139-03.
[3] The declaration of Dr. Phinney and Exhibit A to the declaration of Dr. Phinney are filed herewith.



FIG. 5

Davenport discloses thirteen separate hardwired embodiments, each one being materially different than the other. *See* Phinney Decl. at ¶ 6. As shown below, the first and second conduction control means (yellow and green, respectively) can be hardwired using several different components, including switches, capacitors, or simply a wired-connector. *Id.*

FIG. 11

Each of these configurations (and embodiments) provide a critical difference to how each of Davenport's embodiments operate. As a demonstration of the material differences, Davenport states that embodiments 1-2 and 11-13 fail to provide any shock protection whatsoever, and require warning on the LED lamp packaging for operators. Dkt. 139-03 at [0077]. While other embodiments use a mechanical switch for the operator. *See, e.g., Id.* at [0083].

## IV. DEFENDANTS' MOTION FAILS TO DEMONSTRATE ANTICIPATION

Defendants' motion fails to demonstrate that there is no genuine issue of material fact of anticipation.

Anticipation requires that the identical invention as claimed by the '700 Patent be described by a single prior art reference. "Because the hallmark of anticipation is prior invention, the prior art reference—in order to anticipate under 35 U.S.C. § 102—must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008); *see also Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989) ("The identical invention must be shown in as complete detail as is contained in the ... claim."). It is not enough for anticipation that the reference have all the claimed elements, "[t]he test is more accurately understood to mean 'arranged or combined in the same way as the claim.'" *Net MoneyIN,* 545 F.3d at 1369. In other words, to demonstrate that Davenport anticipates the claims of the '700 Patent, Defendants must show that Davenport describes an embodiment (*i.e.*, a single LED tube lamp) that teaches each and every limitation of the tube lamp of the claims of the '700 Patent.

### A. Defendants Fail at the Threshold Level to Demonstrate that Summary Judgement of Anticipation is Appropriate

Defendants motion does not meet the minimum threshold requirement to demonstrate anticipation, *i.e.,* that Davenport teaches a single LED tube lamp exactly as claimed by the '700

Patent. On the other hand, Plaintiffs' expert Dr. Phinney has explained why Davenport does not anticipate the claims, at least raising a genuine issue of material fact, that should allow the jury to hear the issue.

Defendants' motion mixes and matches different, disparate hardwired features of Davenport to meet the claims. Defendants motion does not focus on a specific embodiment of an LED tube lamp. Instead, Defendants take 13 possible hardware configurations of the "first conduction means 340" and "second conduction means 370" as a bucket to simply pull from, to fit the needs of any one limitation or argument. But, Davenport does not disclose a single LED tube lamp with 13 options—it discloses 13 separate LED tube lamps that operate very differently from each other. *See* Phinney Decl. at ¶ 6. The physical hardware component that is used for the "first conduction means 340" (yellow) and "second conduction means 370" (green) drastically changes the operation of the LED tube lamp and, more specifically, power delivery across its two ends. *Id.* This makes a critical difference to important limitations of the '700 Patent claims, which are directed to double-ended power delivery for two separate power modes.



Dr. Phinney, in contrast, provides testimony describing why Davenport does not anticipate the claims, raising a genuine issue of material fact that should be heard by the jury. The claims of the '700 Patent require that power be delivered across both ends of the LED tube lamp, and circuitry to use either low frequency power or an electronic ballast depending on the

signal type. Dkt. 139-02 at 96:56-97:8. As Dr. Phinney explains, Davenport "clearly discloses that in the first mode, driven by AC mains, the LEDs receive power from a pair of pins at one end of the lamp." Ex. A at ¶ 727 (citing Davenport at [0007] which stated power was supplied at only "one end of the lamp"). As explained by Dr. Phinney, the embodiments Dr. Lebby relied-upon, fail to demonstrate anything related to delivering power to both ends of the LED tube lamp. *Id.* at ¶ 728. This dispute between experts—and Defendants' failure to demonstrate in their motion that they have sufficient evidence to demonstrate that a single embodiment of Davenport anticipates the claims of the '700 Patent—raises a genuine dispute of material fact that should be left for the fact finder. *See, e.g.*, *Bd. of Regents, The Univ. of Texas Sys. v. Ethicon, Inc.*, No. 1:17-CV-01084-LY, 2020 WL 3580147, at *3 (W.D. Tex. Apr. 15, 2020) (denying summary judgment of anticipation stating that "[t]he two figures described [of the prior art] are different, discrete examples of how the polymer to which [prior art] is directed could be utilized. [The prior art] does not teach how the polymer and active agent dispersion of Fig. 5 could be transformed to the fiber of Fig. 10.").

### B. Defendants' New Reliance Fails to Demonstrate Anticipation

Defendants' motion—regarding key challenged elements—is based primarily on paragraph [0063] of Davenport.[4] Dkt. 139 at 10. Defendants imply that their expert opined on this paragraph in a way that supports summary judgment, but Dr. Lebby did no such thing; he did not provide *any* opinion on this paragraph. Dkt. No. 140-03 at ¶¶ 229-290. Only Plaintiff's expert, Dr. Phinney, provided an opinion on [0063], which he testified provides a finding of no anticipation.

---

[4] Defendants shifting from embodiments in Dr. Lebby's report only emphasizes their failure to identify a single embodiment for anticipation, as discussed in the preceding section.

Defendants' questioning focused entirely on Davenport's paragraph [0063] (Ex. 1,[5] Phinney Dep. Tr. at 166:12-24 (asking Dr. Phinney to focus his attention to paragraph 63 and the "[s]econd conduction control means 370")). Defendants rely heavily on this line of questioning and a quote out of context. In context, however, it is apparent that Dr. Phinney raises a material dispute of fact regarding Davenport's disclosure.

Dr. Phinney's testimony demonstrates that Defendants' interpretation of Davenport is incorrect, and that Davenport does not anticipate the claims of the '700 Patent. Dr. Phinney stated that Davenport disclosed an LED tube lamp that required operator modification to configure it to receive power for each mode power mode. Specifically, when questioned about paragraph [0063] of Davenport, Dr. Phinney's full answer (which Defendants cut off Dkt. 139 at 4) is: "for this kind of tube 115 *you can -- you can* apply the low frequency across the -- across the tube." Ex. 1 at 168:11-13 (emphasis added). He gave context to what is meant by "can," by stating that he was referring to an operator physically modifying the tube for each power arrangement. *Id.* at 183:11-185:12 (stating that to provide power across the tube that "[t]he installer needs to go and configure the thing by hand using the switch to make it work in one of those two modes and I just see that as different from the claims of the '700 Patent that you know, providing the circuitry that's doing the configuration for you"); Phinney Decl. at ¶ 7. An apparatus that requires physical modification to arguably meet claim limitations does not anticipate those limitations, and summary judgment is inappropriate.

Further, [0063] of Davenport is plainly consistent with Dr. Phinney's testimony. Specifically, [0063] states that the "conduction control means 370 is configured as a capacitor or a switch situated in the open position." Dkt. 139-03 at [0063]. And, either one of these

---

[5] The declaration of Miguel Bombach and Exhibit 1 to the declaration of Miguel Bombach are filed herewith.

hardware configurations work "to limit conduction of current when the first circuit is operating" "via third power connector pin." *Id.* In other words, both the switch and the capacitor are there to keep conduction across both ends of the LED tube lamp off when commercial power is used. Phinney Decl. at ¶ 7. This is the exact opposite of the claims of the '700 Patent, which require that power be provided across both ends of the LED tube lamp for commercial power. Dkt. 139-02 at 96:54-97:2. The literal teachings of the Davenport embodiment Defendants now rely on does not anticipate the claims.

Dr. Phinney's statement that "you can apply the low frequency across … the tube" referred to the switching mechanism. If an operator wanted to conduct across the LED tube in the low frequency mode, they would need to manually change modes via mechanical switches, *i.e.*, change these switches from "open" to "closed."[6] Phinney Decl. at ¶ 7. But as Dr. Phinney explained, requiring a mechanical switch to flip between power modes is not what is described by the '700 Patent's claims. Phinney Decl. at ¶ 7. The claims describe circuitry that is able to operate in either low-frequency or ballast mode, based on the input signal (not based on an operator configuration). Dkt. 139-02 at 96:65-67 ("the LED tube lamp is configured such that when the received external driving signal is a low frequency signal, the LED tube lamp causes…"); '700 Patent at 97:3-5 ("the LED tube lamp is configured such that the driving circuit does not drive the LED module to emit light, when an external driving signal input…")

In addition, Defendants' seeming reliance of the "first conduction control means 340" as being a mechanical switch conflicts with its analysis of claim 6. For claim 6, Defendants argue that the "first conduction control means 340" is an "installation detection circuit" that allows the

---

[6] A capacitor works to prevent conduction from a low frequency signal, *i.e.*, that from commercial power, but it works to conduct high frequency signals*, i.e.*, from that of an electronic ballast. *See* Phinney Decl. at ¶ 7. Consequently, it is not a component that is configured to conduct lower frequency signals.

LED tube lamp to conduct or not depending on whether there is a proper installation. Dkt. 139 at 14. A mechanical switch, which an operator flips to on or off, is clearly not circuitry that detects a proper installation (if anything, it would be the operator that makes that determination). *See* Phinney Decl. at ¶ 8. Defendants' claim 1 reliance plainly demonstrates the validity of claim 6 (and its dependent claim 49), and demonstrates its mix-and-match approach explained in the preceding section.

Finally, it important to again note that Dr. Lebby never opined on [0063] of Davenport, or whether it has any relevance to the claim limitations. Dr. Phinney is the only expert that provides opinion, and his opinion is that does not meet the claim limitations. It would be more than reasonable for a juror to believe Dr. Phinney here, and his testimony should certainly go to the jury. Consequently, Defendants' motion for summary judgment should be denied.

## V.   CONCLUSION

For the reasons described above, there exists a genuine issue of material fact as to whether Davenport anticipates claims 1, 6, 48, and 49 of the '700 Patent. Defendants' motion for summary judgment should accordingly be denied.

-12-

Dated: August 23, 2021                                  Respectfully submitted,

/s/ *Miguel J. Bombach*
Matthew C. Bernstein
MBernstein@perkinscoie.com
Evan S. Day (Pro Hac Vice)
EDay@perkinscoie.com
Miguel J. Bombach (Pro Hac Vice)
MBombach@perkinscoie.com
Ruchika Verma (Pro Hac Vice)
RVerma@perkinscoie.com
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

Skyler M. Howton, Texas Bar No. 24077907
SHowton@perkinscoie.com
500 N. Akard Street, Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 259-4951
Facsimile: (214) 965-7752

**ATTORNEYS FOR JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. AND OBERT, INC.**

-13-

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record on this 23rd day of August 2021.

By: */s/ Miguel J. Bombach*
Miguel J. Bombach